## Brosnan's Appeal.

Argued October 26, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John E. Evans, Jr.,* of *Margiotti, Pugliese, Evans & Buckley,* for appellant.

*William L. Jacob,* with him *C. W. Sypniewski,* for appellees.

*John J. Kennedy,* City Solicitor, for Board of Adjustment.

OPINION BY STADTFELD, J., December 17, 1937:

This is an appeal by Marie C. Miller from the decree of the Court of Common Pleas of Allegheny County, revoking a permit issued by the Bureau of Building Inspection for the erection of a dwelling house having a frontage of 9½ feet, upon her lot which is located at the· intersection of Penn and Homewood Aves. in the

City of Pittsburgh. The material facts are not in dispute.

Subsequent to the granting of the permit, an appeal was taken by the appellee to the Board of Adjustment, asking that the permit be revoked. The Board, after hearing, refused to revoke the permit granted to appellant. Following the Board of Adjustment's refusal to revoke the permit, the appellees appealed to the Court of Common Pleas of Allegheny County. This was granted and the matter came up for hearing before MARSHALL (E. W.), J.

Findings of fact and conclusions of law were made and a decree entered by the court reversing the decision of the Board of Adjustment and revoking the building permit.

The following undisputed facts may be gathered from the opinion of the lower court: "3. In the year 1926 W. A. Miller was the owner of a tract of land at northwest corner of Penn and Homewood Avenues which had a frontage of 228.78 feet along Penn Avenue and a depth of 176.17 feet along Homewood Avenue. On November 8, 1926 W. A. Miller applied to the Bureau of Building Inspection of the City of Pittsburgh for permission to erect eight dwelling houses on the tract aforesaid, one of which dwelling he proposed to erect on each of eight lots into which he had divided said tract. Said application was accompanied by a draft or plan of the eight lots aforesaid, and of the proposed location of each dwelling house with respect to the various lot lines. Thereupon permits to build on lots Nos. 1, 2, 4, 5, 6, 7, and 8 were granted while a permit to build on Lot No. 3 was refused on account of the insufficient set back of the building proposed to be erected thereon from the line of Homewood Avenue.

"4. Said lot No. 3 was situate at the northwest corner of Penn and Homewood Avenues and as laid down on said plan had a frontage of 36 feet on Penn Avenue;

Lot No. 4 adjoined Lot No. 3 on the west, and had a frontage of 40 feet on Penn Avenue, a depth of 100 feet, and a total area of 4,000 square feet. In his application for permit to build on Lot No. 4, W. A. Miller specified that he proposed to erect a 2-story brick and tile dwelling for one family on a lot having a frontage of 40 feet and a depth of 100 feet. A true copy of such application and of the plan accompanying same are attached to the 'Stipulation of Counsel' filed of record in this case.

"5. Pursuant to permit awarded to him, W. A. Miller erected a single family, two-story brick dwelling house on lot No. 4, locating the same precisely as shown on his said plan. Said house is known as No. 7163 Penn Avenue.

"6. By deed dated February 9, 1927, W. A. Miller conveyed to his sister, Margaret McClain, a lot of ground at the northwest corner of Penn and Homewood Avenues comprising Lots Nos. 3 and 4 aforesaid, with a frontage of 76 feet on Penn Avenue and a depth of approximately 100 feet along Homewood Avenue. At the time of such conveyance the brick dwelling before referred to was standing on Lot No. 4, while Lot No. 3 was unimproved.

"7. On April 16, 1927, Margaret McClain sold to William J. Brosnan the dwelling house known as No. 7163 Penn Avenue, but instead of conveying to Brosnan the entire 40-foot lot specified on the application for permit to erect said house, which lot had an area of 4,000 square feet, Margaret McClain conveyed to him only the westerly 36 feet thereof, having a total lot area of but 3,600 square feet. Said dwelling house stands entirely within the lines of said 36-foot lot, and house and lot are presently owned by Anna Brosnan one of the appellants in this case.

"8. About two years after her conveyance to Brosnan, Margaret McClain conveyed the 40-foot lot at the

corner of Penn and Homewood Avenues, comprised of Lot No. 3 and the easterly 4 feet of Lot No. 4 aforesaid, and title thereto, by various later conveyances, became vested in Marie C. Miller who owns the same at this time. Marie C. Miller is the wife of W. A. Miller before mentioned. Bess Coyne and Jay A. Coyne, her husband, are the present owners of Lot No. 2 shown on the plan aforesaid, which lot borders on and lies immediately to the north of the lots now owned by Anna Brosnan and Marie C. Miller.

"9. It is provided in Section 31 of the aforesaid Zoning Ordinance of the City of Pittsburgh inter alia as follows: 'No yard, court or other open space provided about any building for the purpose of complying with the provision of these regulations shall again be considered as a yard, court or other open space for another building.'

"10. On May 17, 1935, Marie C. Miller applied to the Bureau of Building Inspection for a permit to erect on her said 40-foot lot at the corner of Penn and Homewood Avenues a one-family, one story, frame dwelling house, located 30 feet north of Penn Ave. and 50 feet west of Homewood Avenue and to have a front or width along Penn Avenue of but 9½ feet, a depth of 55 feet, and a width in rear of 14 feet. Thereupon a permit was issued as requested and Marie C. Miller at once began construction of a building in accordance therewith.

"11. On May 20, 1935 Anna Brosnan, Bess Coyne and various of their neighbors filed written protest against the issuance of such permit to Marie C. Miller, and appealed to the Board of Adjustment to revoke the same. After notice to all parties in interest, the Board of Adjustment entered into a hearing and, after testimony taken, made an order on August 5, 1935, sustaining the granting of the permit and denying petitioners' appeal for revocation.

"12. Notwithstanding receipt of notice of hearing on the application for revocation of permit, Marie C. Miller declined to suspend building operations pending decision by the Board of Adjustment, but proceeded to construct and complete the frame dwelling house on her said 40-foot corner lot in accordance with the permit, and such house is now occupied as a dwelling by a single family.

"13. The westerly side of the dwelling house which Marie C. Miller erected on the 40-foot corner lot is located precisely 3 feet eastwardly from the westerly side line of said lot. As a result of such location said dwelling house projects for a distance of one foot across the easterly side line of lot No. 4, being the 40-foot lot mentioned in the application of W. A. Miller for permit to erect the dwelling house now owned by Anna Brosnan. Further, the easterly 400 square feet of Lot No. 4 is now used by Marie C. Miller in part as a place on which to maintain her one-story frame dwelling house, and in part as a side yard for such dwelling."

The basis for the court's decision was that: "1. W. A. Miller, by constructing the dwelling house at 7163 Penn Avenue under a permit obtained by representing that same would be constructed on a lot in size 40 x 100 feet, with a total area of 4,000 square feet, (being Lot No. 4) impliedly dedicated all of such lot for use as lot area for the house so erected as long as the same would stand. 2. The easterly four feet of Lot No. 4 containing 400 square feet, having been used to make up the minimum lot area required under the zoning ordinance for dwelling house at No. 7163 Penn Avenue in order to obtain permit for the erection of such house, no subsequent owner of such strip of ground could lawfully use the same to make up the minimum lot area required to obtain permit to build on lot No. 3 adjoining, so long as the house at No. 7163 Penn Avenue remained standing. 3. The Bureau of Building Inspection was

without power to issue a permit to Marie C. Miller to erect a building on her 40 foot corner lot, any part of which would be located on the easterly four feet of lot No. 4 or within three feet thereof."

The City of Pittsburgh is a city of the second class under the laws of Pennsylvania. As such it enacted a zoning ordinance on August 9, 1923, being No. 372, by the terms thereof all of the real estate in said city fronting on Penn Avenue between Homewood and Long Avenue was classified as residential and placed in Zone A-1. Said ordinance has been amended from time to time in particulars not presently material, and as amended yet remains in force. The following provisions are contained in Section 32 of said ordinance and relate to front and side yards and lot areas of property situate in Zone A-1; "First Area District. In this District, the minimum dimensions of yards and other open spaces, and the area of lot required per family housed thereon, shall be as follows: Front Yard: There shall be a Front Yard having a depth of not less than thirty (30) feet. Side Yard: Interior Lots: (a). There shall be a side yard on each side of a One-Family dwelling, one of which shall be at least three (3) feet wide and the total width of both Side Yards shall be not less than ten (10) feet ...... Corner Lots: There shall be a side yard, at least thirty (30) feet wide, adjoining the intersecting street, and a side yard on the opposite side of the building, as prescribed in the foregoing paragraphs (a), (b) and (c); provided that this regulation shall not reduce the buildable width of a corner lot, of record at the time of the passage of this ordinance, to less than twenty-five (25) feet ...... Lot area for Family: The minimum requirement as to lot area per family housed thereon shall be as follows: One-family dwelling, four thousand (4,000) square feet; ......"

The important question involved in this case is: Can a building be lawfully erected on a lot or a part thereof,

which was previously included within a minimum lot area required under the Zoning Ordinance for an adjoining dwelling theretofore erected, when the Ordinance forbids such second use under Section 31 of the aforesaid Zoning Ordinance, which provides, inter alia, as follows: "...... No yard, court or other open space provided about any building for the purpose of complying with the provisions of these regulations shall again be considered as a yard, court or other open space for another building."

In the briefs of counsel, a great deal of space is devoted to a consideration of the nature and character of "dedications", "easements", "survitudes", etc. We do not consider that we should be confined to the limitations or restrictions in reference to them when applying or construing the provisions of the Zoning Act and ordinances passed pursuant thereto. To do so would be to defeat the very purpose of such legislation. The law must keep pace with modern changing conditions.

The purpose of the Zoning law is indicated in Section 1 of the Act of March 31, 1927, P. L. 98, PS 53, sec. 9183: "For the purpose of promoting health, safety, morals or the general welfare of the community, cities of the second class are hereby empowered to regulate, restrict or determine, the height, number of stories and size of buildings and other structures, the percentage of lot that may be built upon, the size of yards, courts and other open spaces, the density of population, and the location, use and occupancy of buildings, structures and land for trade, industry, residence or other purposes."

When appellant's predecessor in title (now her husband) applied for a permit for the erection of a one-family dwelling of 6 rooms and bath and garage, on Lot 4, he specified how much ground was to be appropriated to the building in order to conform with the zoning ordinance. The size of the lot is given at front-

40 feet; rear-40 feet; and depth-100 feet. The minimum area for that kind of a dwelling in the locality in question was and still is 4,000 square feet. It was upon that basis the permit was granted and the building erected.

We believe that when appellant took title to this piece of ground, she took it subject to the prior action of her husband, and that the restrictions he placed on the plan should be held to bind her as well as him.

The constitutionality of the Zoning Act has been sustained by our Supreme Court and similar legislation has been sustained in other jurisdictions. Every owner of property within the district covered by the act of assembly holds title subject to the provisions of the act and such reasonable regulations as may be adopted pursuant thereto. The reasonableness of the provisions of the ordinance adopted to put said act into effect, and referred to supra, has not been questioned.

The language in the learned opinion of the lower court is most pertinent: "We take it, therefore, that any subsequent purchaser of the four-foot strip took it subject to the restriction before mentioned and that a complete answer to Marie C. Miller's request for leave to construct her proposed dwelling house in part on such strip was the provision of Section 31 of the ordinance and the previous action of her predecessor in title. *To hold otherwise would render impotent and utterly useless the salutary provisions of the zoning ordinance which are designed to promote the health and safety of the city's inhabitants by providing for each individual dwelling house an ample lot area and sufficient side yards."* (Italics supplied).

Appellant contends that the certiorari by which the proceedings were brought into the lower court, as well as the appeal before this court, limits the review in both instances to an examination of the record to determine whether or not upon its face any errors of law are re-

vealed. While we recognize the distinction between a certiorari and an appeal, we believe that the same is not controlling in the instant case.

The Act of March 31, 1927, P. L. 98, par. 7, provides, inter alia, as follows: "Any person or persons jointly or severally aggrieved by any decision of the board of adjustment, or any property owner, or the head of any department interested therein, may present to the court of common pleas of the county wherein said city may be located, a petition duly verified, setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.·

"Upon the presentation of such petition, the court may allow a writ of certiorari, directed to the board of adjustment, to review such decision of the board of adjustment and shall prescribe therein the time within which a return thereto must be made and served upon relator's attorney, which shall not be less than ten days and may be extended by the court. The allowance of the writ shall not stay proceedings upon the decision *appealed* from, but the court may, upon application, on notice to the board and on due cause shown, grant a restraining order, upon the petitioner giving a bond as in other injunction proceedings.

"The board of adjustment shall not be required to return the original papers acted upon by it, but it shall be sufficient to return certified or sworn copies thereof or of such portions thereof as may be called for by such writ. The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision *appealed from* and shall be verified. The board of adjustment shall be respondent in said *appeal* with the right to appear in person or by counsel and defend said action. The court may by order authorize intervenors to join in said proceedings.

"If upon the hearing it shall appear to the court *that testimony is necessary for the proper disposition of the matter,* it may take evidence or appoint a referee to take such evidence, as it may direct, and report the same to the court with his findings of fact and conclusions of law, *which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm wholly or partly or may modify the decision brought up for review.*" (Italics supplied).

The court below treated the proceedings as an appeal from the decision of the Board of Adjustment, with a certiorari to return its record to the common pleas court for review. In view of the provisions quoted for the taking of testimony "which shall constitute a part of the proceedings upon which the determination of the court shall be made," and that, "The court may reverse or affirm wholly or partly or may modify the decision brought up for review," we do not think that the court was limited to the technical procedure or disposition simply as if on a certiorari.

We believe the case was correctly disposed of in the very comprehensive opinion of the lower court.

The assignments of error are overruled and the decree affirmed.