## Miller, Appellant, *v.* Seaman et al.

Argued May 8, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John E. Evans, Jr.,* of *Margiotti, Pugliese, Evans & Buckley,* for appellant.

*Anne X. Alpern,* First Assistant City Solicitor, with her *Wm. Alvah Stewart,* City Solicitor; and *William L. Jacob,* for intervening appellees.

OPINION BY KELLER, P. J., September 27, 1939:

This case, while concerned with the same subject matter as was involved in *Brosnan's Appeal,* 129 Pa. Superior Ct. 411, 195 A. 469—affirmed in 330 Pa. 161, 198 A. 629—has to do with a wholly different legal question.

Appellant is the owner of a lot of ground (No. 3 on the Miller plan of lots) situated on the northwest corner of Penn and Homewood Avenues in the City of Pittsburgh, and containing 4414 square feet of ground. Penn Avenue and Homewood Avenue join at this point at an obtuse angle. The lot is 40 feet front on Penn Avenue and 100 feet deep, on the west side, and somewhat more than 100 feet deep on Homewood Avenue. At the rear the lot is 47 feet wide. It is located in a Class B residential district, and under the zoning regulations in force in that city any dwelling located on the lot must be set back 30 feet from Penn Avenue and 30 feet from Homewood Avenue, and the lot must contain 4000 square feet. Mrs. Brosnan, one of the intervening appellees, is the owner of the adjoining lot on the west (No. 4) which has a frontage on Penn Avenue of 36 feet, on which is erected a dwelling house, No. 7163 Penn Avenue. The other intervening appellee, Mrs. Coyne, is the owner of the lot on the north (No. 2) abutting on the lots of appellant and Mrs. Brosnan. It was decided in *Brosnan's Appeal,* supra, that this

appellant, under the zoning regulations in force, could not build on the western four feet of her lot, since 40 feet had originally been allocated by the prior owner, who laid out the lots, to Lot No. 4, when the house thereon was built, although only 36 feet had been conveyed, with the dwelling thereon, to Mrs. Brosnan; and also that an additional three feet wide area space must be left open on the west of any building erected on appellant's lot. This prevents appellant from building on the western seven feet of her lot. At a point 30 feet back from Penn Avenue her lot is 42 feet six inches wide. Deducting 30 feet which must be left open on the Homewood Avenue side, the entire space available for building is five feet six inches facing Penn Avenue by 55 feet in depth, with a width of ten feet at the rear, an area of 426 square feet. This leaves seven feet open on the west side of the building and 30 feet on the east, and the lot contains slightly more than the required 4000 square feet, exclusive of the four foot strip on the west side of the lot.

The appellant proposes to build a frame one-story dwelling (7167 Penn Avenue) which will use all the space legally available for building purposes under the regulations aforesaid; otherwise the lot cannot be used by her at all, and although she is obliged to pay the taxes, the intervening appellees get all the benefit from it at no cost to themselves.

The house which she proposes to build will be twelve feet seven inches high and will contain three rooms and a bath and will be equipped with running water, gas, electricity and a central heating plant. It will have one door opening on Penn Avenue and two doors on Homewood Avenue.

She applied to the Superintendent of the Bureau of Building Inspection on June 28, 1938 for permission to erect this building and on July 1st received a communication from him refusing the application "for the

reason that the said construction will be in violation of Act of Assembly approved April 28, 1899, P. L. 85, section 1, which provides: 'Every new dwelling house shall have at least fourteen feet front.' "

The act of assembly cited as the sole reason for refusing the application had nothing to do with zoning regulations ordained by the City under the Zoning Enabling Act of June 21, 1919, P. L. 570, and its amendments. It was an amendment of section 15 of the Act of June 7, 1895, P. L. 135, regulating the construction, etc. of buildings in cities of the second class, and the entire section, including the amendment, was repealed by Act of May 13, 1915, P. L. 297, p. 300.

Appellant thereupon filed this petition for writ of alternative mandamus to require the Superintendent of Building Inspection to perform the ministerial duty of issuing to her the permit applied for, for the construction of a one-story, one family frame dwelling on her property located at 7167 Penn Avenue, said building to be five feet six inches in front, ten feet wide in the rear, fifty-five feet in depth and twelve feet, seven inches high at the highest point; and secured a writ returnable August 9, 1938 at 8:30 o'clock A. M., service of which was duly accepted for the defendant on July 19, 1938.

On August 9, 1938 Mrs. Brosnan and Mrs. Coyne presented their petition praying for leave to intervene as defendants, which was granted and they were allowed fifteen days in which to file an answer.

On August 10, 1938, the original defendant, H. L. Seaman, Superintendent of Building Inspection, having filed no return or answer to the alternative writ of mandamus, judgment was entered in open court, on motion of the plaintiff, in her favor and against the Superintendent of the Bureau of Building Inspection for default in filing a return.

On August 22, the intervening defendants filed

an answer in which they set up (1) the decree in *Brosnan's Appeal,* supra; (2) the continued maintenance on the lot of the structure declared illegal in *Brosnan's Appeal,* supra, as to its use of the western four feet of her lot; (3) that the proposed building is not a one-family dwelling, but a spite fence; (4) that the appellant's remedy was by an appeal under the zoning act and ordinance and not by writ of mandamus.

The plaintiff demurred to the answer, and the court, after hearing argument, overruled the demurrer, on the grounds: (1) that the proposed building did not have sufficient width to constitute it a dwelling; (2) that the plaintiff should have appealed to the Board of Adjustment from the refusal of the permit, in accordance with the provisions of the Zoning Law and ordinance; and (3) that accordingly the action in mandamus would not lie.

Plaintiff appealed.

Following the argument we endeavored to get the parties, irrespective of their strict legal rights, to compose their differences and repress their animosities, in the hope that a result could be arrived at which would work a reasonably fair adjustment of the difficulties involved. The appellant and the city seemed inclined to adopt some such compromise, but the intervening appellees have insisted on their legal rights, nothing more nor less. We are accordingly required to dispose of the case on that basis.

On a strict decision of the respective contentions, we are of opinion that the zoning ordinance is not involved in this appeal. The application for a permit asked for nothing contrary to the zoning regulations. Had the permit been refused because the proposed dwelling failed to comply with the zoning regulations, or had the application for a permit asked for something contrary to the terms of the zoning ordinance, plaintiff's only recourse would have been to appeal to

the Board of Adjustment and then, if necessary, to the courts: *Taylor v. Moore*, 303 Pa. 469, 154 A. 799; *Taylor v. Haverford Twp.*, 299 Pa. 402, 149 A. 639. But at no time did the Superintendent of Building Inspection advance such a reason for refusing to issue the permit and on the contrary specified a reason not connected with the zoning regulations.

There is no contention that the plaintiff's lot does not contain 4000 square feet, exclusive of the 400 square feet which for all practical purposes, under the decision in *Brosnan's Appeal*, supra, the plaintiff is not entitled to consider as part of her lot for building purposes. The proposed building has a clear area space three feet wide in addition to the four feet involved in *Brosnan's Appeal*, on the west side, and of thirty feet on the east side. It is set back thirty feet from Penn Avenue and a like distance from Homewood Avenue; all of which is in strict accord with the zoning ordinance. In fact, outside of the narrow width of the building there is no contention that the proposed house does not comply with all the zoning regulations, and there is no zoning regulation or statutory enactment fixing the width of dwelling houses in B residential districts, or requiring them to be of a certain size.

We are unable to find any statements of *fact* in the return on which the conclusion may be based that the proposed building cannot be used as a dwelling. It contains more area than a one-story building fourteen feet by thirty feet. That it is to be built of frame is not contrary to any law, or to any zoning regulation for a class 'B' residential district in cities of the second class. Nor does it violate such regulations because it is to be only one story high: *Com. ex rel. Shooster v. Devlin*, 305 Pa. 440, 158 A. 161; *Sale v. Stahlman*, 81 W. Va. 335, 94 S. E. 497; *Brown v. Board of Appeals of Springfield*, 327 Ill. 644, 159 N. E. 225; *Dorison v. Saul*,

*Supt.*, 98 N. J. L. 112, 118 A. 691. It is true that it may not harmonize or be in aesthetic agreement with the buildings of the intervening appellees on the north and west, but zoning laws and regulations are not based on aesthetics but on the health, morals and safety of the community, and these are not affected by the proposed building. The limitation of the right to use one's own property, which is one of the consequences of zoning regulations must be reasonable and based on imperious considerations of public health, morals and safety, not on artistic or aesthetic considerations: *White's Appeal*, 287 Pa. 259, 267, 134 A. 409; *Romar Realty Co. v. Haddonfield*, 114 A. 248, 96 N. J. L. 117. It requires something more than the latter to deprive this appellant of any and all use of her land, while holding her responsible for the taxes upon it, and at the same time, in effect, to confer the use of it as a permanent outlook upon the intervening appellees who bought, paid for and are entitled to only their own lots. So long as the plaintiff can use her lot for a dwelling within the provisions and regulations of the zoning ordinance, she has a right to do so, irrespective of its effect on the aesthetic sensibilities of her neighbors.

But even small buildings can be put to very useful purpose. The writer of this opinion recalls a four or five story building on Chestnut Street below Ninth Street, Philadelphia, which had a frontage on the street of only five feet, and was used for business purposes for years. In the widening of Fifteenth Street between South Penn Square and Chestnut Street, Philadelphia, the major portion of a number of buildings was taken and appropriated, leaving a strip less than four feet wide facing on Penn Square and running along Fifteenth Street, which is used for three or four apparently thriving small stores or business places. There is nothing in this record on which to base the conclusion that

the proposed building cannot and will not be used as a dwelling.

The case of *Douglass v. Queeney,* 109 Pa. Superior Ct. 336, 167 A. 453, cited by appellees has no application. There a grantor, who operated a tourist home, placed in his deed conveying land nearby, a building restriction which was designed to prevent competition with his tourist business, and provided that the land conveyed to the grantees should be used by them only for a picnic ground, a refreshment stand for the serving of light lunches; and for the erection of *two dwelling houses to be used as dwellings only;* and it was held that *four* sleeping cottages, intended to be rented out for occupancy at night by transient tourists, were not dwelling houses within the terms of the grant. They were buildings which the grantor clearly intended to prohibit in his deed, because of their competition with his own business.

As we said before, the refusal of the permit was not based on any violation of the zoning regulations, but because the width was not as great as was provided for in an act of assembly which had been repealed. See *Truitt v. Phila.,* 221 Pa. 331, 341, 70 A. 757. If the city or the Superintendent had filed an answer to the writ setting forth any alleged violation of the zoning regulations, it might be different. The Superintendent evidently realized that his refusal of the permit had been based on a reason that had no legal foundation, and as he had no other ground for refusing the permit he allowed judgment to be entered against him by default. The intervening defendants, not having set forth in their answer any specific violation of the zoning regulations, cannot be heard to object to the proceeding in mandamus as a proper remedy for the failure of a public officer to perform a purely ministerial duty: *Coyne v. Prichard,* 272 Pa. 424, 427, 428, 116 A. 315; *Wright v. France,* 279 Pa. 22, 25, 26, 123 A. 586; *Com.*

*ex rel. Shooster v. Devlin,* 305 Pa. 440, 445, 158 A. 161; *Herskovits v. Irwin,* 299 Pa. 155, 160, 149 A. 195. Their right to defend as intervening defendants in this proceeding—mandamus—rises no higher than the original defendant's.

Nor is the failure of the plaintiff to remove the construction which was declared unlawful by the courts any ground for refusing a permit for the construction of a building which is lawful.

The remedy for plaintiff's failure to comply with the order in the former case is not to deprive her of her lawful use of her property, but to take proceedings to stop the unlawful use of it.

The assignment of error is sustained. The order is reversed and the record is remitted to the court below with directions to sustain the demurrer and to enter judgment for the plaintiff; and to issue a writ of peremptory mandamus in accordance with the prayer of the petitioner appellant.

Costs to be paid by intervening appellees jointly.