## Hinton v. Zoning Board of Adjustment (No. 2)

*Michael H. Egnal*, for plaintiff.

*Abraham L. Freedman*, city solicitor, and *Matthew W. Bullock, Jr.*, assistant city solicitor, for defendant.

SLOANE, J., January 22, 1954.—Mr. Hinton petitioner-appellant, sought before the Philadelphia Zoning Board of Adjustment a certificate of variance to permit his property (1625 Master Street, Philadelphia) to be used for a six-family dwelling, though lacking in rear-yard area. The board refused to grant the variance and he took this appeal (Act of May 6, 1929, P. L. 1551, sec. 8, 53 PS §3829). Before us, on this appeal, the only proper question to decide is "whether the Board of Adjustment, in refusing the variance requested, was guilty of a manifest and flagrant abuse of discretion": Reininger Zoning Case, 362 Pa. 116, 117.

Mr. Hinton bought the property in 1946. It is a three-story residence converted by a previous owner into a six-apartment multiple dwelling "on a date prior to" December 8, 1941. There are two apartments on each floor, with private kitchens, but semi-private bathrooms; the two apartments on each floor share one bathroom. Each of the apartments has less than 400 square feet of space. The rear yard of the property is about 26 feet deep by 18 feet wide, or an area of about 468 square feet.

The building is, and has been since the conversion, in violation of the rear-yard area provision of the ordinance for a multiple dwelling in a "D-1" residential district, in which the property is located. Section 11 of the ordinance says that the rear-yard area required in such a district shall be the same as for a "D" residential district. The requirement for a "D" residential district (and therefore for a "D-1" district, too) is found in section 10(12) (d):

"*Multiple dwellings* shall have a minimum rear yard of three hundred and forty-four (344) square feet, and shall have an additional one hundred (100) square feet of rear yard area for each additional family, more than three (3) families."

The minimum requirement for the subject property therefore is 644 square feet of rear-yard area.

The property fails also to conform to a "policy" informally adopted by the board about September 1951 (see stipulation of counsel), to wit, that every apartment in such a building have at least 400 square feet of space, with a separate bathroom and kitchen. Before that time the property was in violation of the rear-yard area requirement of the ordinance itself; thereafter the building failed also to conform to the apartment space and separate bathroom standards which the board had begun to apply.

It did not appear that Mr. Hinton had actual knowledge that his property was in violation of zoning; at any rate, after the violation came to light he applied for the permit he would need, to continue the building operation as before. As to the rear-yard area insufficiency he asked for a variance. As to the apartment space and private bathroom for each apartment he takes the position, first, that the board has no authority to declare such a policy and apply it to him, and second, assuming authority in the board, he should get a variance as to that, too, if one is required.

The board denied Mr. Hinton's application though no one appeared at the hearings to make objection, presumably because, as hereafter indicated, others in the neighborhood are also in violation of zoning requirements. In its findings, the board stated that to permit the use of the building for six apartments would increase population density, tend to create a slum condition, and be detrimental to the peace and quiet of the neighborhood. It found that if Mr. Hinton were allowed to do what he wanted, traffic hazards and parking difficulties would multiply. The board states Mr. Hinton proved no hardship because he knew or should have known when he acquired the property in 1946 that it did not meet the rear-yard provision of the ordinance.

The board further sets forth as a finding that the building did not meet the standards of the board for each apartment in a multi-family dwelling, of 400 square feet per apartment, with private kitchen and private bath.

The board concluded that the health, morals, safety and general welfare of the immediate neighborhood would be affected if permission were granted to use the property in its present state as a six-family dwelling.

Mr. Hinton was his only witness before the board. He testified his building is not crowded; the present occupancy is two persons in each of five of the apartments and but one in the sixth, a total of 11. They are all responsible persons. No question of garage or parking space comes into question because none of them is a car owner. Mr. Hinton stressed also that his property is in a neighborhood made up largely of similar properties which are used as multiple apartment dwellings, they are operated as he operates and it would have to be ruled there are wholesale violations unless he and the other owners are permitted to con-

tinue present operating methods. His testimony did not wholly substantiate his conclusion, it fell short of proving adequately what the conditions were in the other buildings. He testified to personal examination of the interiors of many of these other properties but in many instances went only into the hallways and checked on the number of bells. He did not give measurements for rear yards, or the space and number of bathrooms in all the buildings, though in some instances he did get into properties where there was only one bathroom for two apartments on the same floor. He did not show specifically instances of other violations, or variances. It was however admitted by counsel for the board (and expressed by at least one board member at the hearing) that conditions similar to those in petitioner's property are general in that locality.

It was indicated at the hearing (and in a letter from the board chairman to petitioner's counsel, before the final decision was made), that lack of a private bathroom for each apartment was a principal factor in the board's decision. The intimation could be the board was using the violation of the rear-yard area provision of the ordinance as a means of accomplishing enforcement of the private bathroom standard it had made. Mr. Hinton challenges the right of the board to make such a policy regulation, arguing it to be exclusively a matter for the division of housing and sanitation. He says also that a board policy, even if allowable, may not be applied with extreme strictness.[1]

Mr. Hinton contends that since apartment space and bathroom regulations come within the jurisdiction of the division of housing and sanitation under the Act

---

[1] A question of retroactivity also arises since the semi-private bathroom use antedated the adoption of the policy by the board, but in view of what we say on the board's "policy" we need not answer it.

of June 11, 1915, P. L. 954, 53 PS §3851 et seq., the zoning board may not regulate in that area. Section 12 of the Zoning Statute of 1929, P. L. 1551, 53 PS §3833, contemplates the possibility of overlapping jurisdiction and makes precise provision for it. The section provides for a mutuality that is not exclusive; it provides that where a regulation made under the authority of the zoning statute requires a higher standard than that of another statute or regulation, then the one made under the authority of the zoning statute shall govern; if the other statute or regulation sets the higher standard, then that shall govern. Thus, in the present case, if the zoning requirement is higher than that of housing and sanitation, and is otherwise proper, it is the one to be applied.

The housing and sanitation division has certified Mr. Hinton's operation to be in compliance with its requirements. The question remains whether it is within the province of the board to regulate in the field of apartment space and number of bathrooms, and whether the regulation here involved is a reasonable one. The grant of power in the Zoning Act of May 6, 1929, P. L. 1551, sec. 1, 53 PS §3822, permits the city to regulate, by ordinance, ". . . the density of population, and the location, use and occupancy of buildings, structures and land, for trade, industry, residence or other purposes, so that such uses may be permitted in or excluded from certain portions or sections of such cities, or subject to special regulations."

From this language it would appear that reasonable zoning regulations may be made of apartment space and number of bathrooms in the course of exercising the statutory powers conferred as to "density of population", "use and occupancy of buildings . . . for . . . residence purposes." But the provision is that such regulation be "by ordinance", and therefore it cannot be by "policy" formula or regulations of the

board itself. Section 31(4) of the ordinance provides: "The Board shall adopt rules of procedure in accordance with the several provisions of this ordinance", but this does not include substantive requirements which remain for the legislative body to adopt by ordinance. An administrative body may not legislate even with the swerving impulse to find a way of reaching a desirable result.

Which is not to say the board may not impose conditions to the granting of a variance provided they have a relation to the zoning problem and are reasonable. Thus, in In re Appeal of Consolidated Cleaning Shops, Inc., 103 Pa. Superior Ct. 66, it was held the board could impose a condition that gas fuel instead of coal be used in granting a variance for a cleaning and dyeing business in a commercial zone. The conditions imposed do not have to be the same for each case arising in a particular zone, and should bear relation to the specific case before the board. The board may therefore not make a general policy regulation in a matter which should be covered by statute or ordinance, if at all.

In considering the granting of a variance the board must consider the special conditions of the individual case. See Triolo et al. v. Exley et al., 358 Pa. 555. Whether the board could attach a private bathroom condition in the instant case to the granting of a rear-yard area variance does not come up because the board did not in fact grant a variance either with or without condition. The board cannot, however, apply the policy as part of a general regulation of its own for it would then be legislating in a matter where only the legislative branch can act.

Mr. Hinton (through counsel) points to a proposed new Housing Code to be introduced in city council and under it the space area of his apartments and the semi-private bathroom would conform to the minimum

standards recommended.[2] But proposed legislation, legislation not yet adopted nor even yet introduced, should not be a factor in applying statutes, ordinances or regulations. The proposed code may be changed, or fail of passage, and the board therefore should function under the presently effective statute and ordinance. In Mutual Supply Company Appeal, 366 Pa. 424, 429, it was said:

"The Board disposed of the application according to the law in effect at the time of its action with respect thereto; and that is sufficient."[3]

What it comes down to is whether the board acted within a proper discretion in refusing to give Mr. Hinton a variance of his admittedly insufficient rear-yard area.[4] He claims it would be an unnecessary hardship to require him to increase his rear-yard area up to the ordinance requirement for a six-apartment building. It would mean shearing nine feet off the rear of his building, involve great expense, reduce to a minimum the size of the back kitchens on all three floors, further reduce apartment space which the board claims is already insufficient—all this without benefit to anyone and without any appreciable relation to public health or safety or morals. Mr. Hinton contends that under the doctrine of the Crawford Zoning Case, 358 Pa. 636, this means unnecessary hardship which the board is required to relieve.

---

[2] One member of the board voted "Yes—one year temporary for six apartments containing only three baths because of provisions in the proposed new Housing Code."

[3] In that case a reclassifying ordinance was passed while the application was pending, and since no improvements had been made or money expended on the strength of any permit actually granted, the board was right in disposing of the matter in accord with the amending provision.

[4] Petitioner has enough rear-yard area for a *four*-apartment multiple dwelling and would be within the ordinance in so operating even though with only three bathrooms. The board approved three apartments but for that petitioner would not need a variance of ordinance or even board "policy".

The factual situation was different in that case. There a large lot, about 248 feet by 200 feet, was involved. This lot had a large dwelling on it as well as a detached garage with coachman's quarters above it. The owner wanted to convert the garage into a single dwelling but had insufficient yard space according to the ordinance provision for that zone (in Delaware County). It was held the board should have granted the variance because moving the building (the lot had room enough even for that) would cost $3,500 and require destruction of several old shade trees; the building was there already and its use was to be improved from garage to dwelling purposes. The board had therefore abused its discretion in refusing the variance.

Here, we would agree at once upon a hardship for Mr. Hinton and, if that were all, we would reverse the board and order a variance in that regard. But there is an important consideration which dips the balance, and the board's decision becomes reasonable. Here, the property is in a congested neighborhood and zoning regulation of open rear-yard space in so congested a neighborhood must be upheld if a reasonable exercise of the authority granted by the zoning statute and even though it works a hardship on Mr. Hinton. See Brosnan's Appeal, 330 Pa. 161, 166; Kurman et al. v. Philadelphia Zoning Board of Adjustment et al., 351 Pa. 247; 58 Am. Jur. 974, §52, Zoning. Mr. Hinton must give way, even at sacrifice, to the welfare of the many. Our duty is toward the public good though it thwarts the individual. See Zoning Law and Practice, Yokley (1953), vol. I, sec. 35.

Mr. Hinton's argument that to require him to enlarge the rear yard of his building would further reduce interior apartment space and thus do more harm than good is based on an assumption that he is entitled to a six-apartment operation and that the only prob-

lem is how best to work it out. But it may well be that his building is just too small to be reasonably adapted for a six-apartment multiple dwelling. We cannot say it is unreasonable for the board to insist upon the ordinance rear-yard area requirement even if it can be met only by reduction of the number of permissible apartments.

Mr. Hinton's showing of a present occupancy of but 11 persons offers no premise for decision; if a permit were granted it would authorize six-family occupancy of the six apartments which could bring about an increase in the number of persons living in the building. The desideratum is the authorized use, not present occupancy.

Mr. Hinton points out that the present operation is a profitable one which enables him to keep the building in good condition; that if he were to comply with the zoning ordinance requirements it would not be profitable and he would be unable to keep the building in proper repair. What we have to determine is whether the requirements constitute a proper and reasonable exercise of zoning authority, and monetary advantage or loss, in itself, does not furnish the kind of hardship to warrant granting a variance from the terms of the zoning ordinance: Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582, 584. Taking Mr. Hinton's argument further could lead to a conclusion that an increase in the number of apartments would produce even more revenue and enable the owner to spend even more on repairs; we may get to an absurd result.

The strong factor against Mr. Hinton's position is that he failed to show any special conditions affecting his particular property to justify the board in granting him a variance. The board has power "to authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a

literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done": Act of May 6, 1929, P. L. 1551, sec. 8, 53 PS §3829.

What Mr. Hinton showed was not a special condition affecting his property but a general one affecting the entire neighborhood. And if the ordinance provision no longer fits the neighborhood, it is a matter for legislative change, a change not to be effected by chipping away at the ordinance with sporadic grants of variances. See Price v. Chester Zoning Board of Appeals, 30 Del. Co. 478. And Mr. Hinton's argument of numerous violations in the district not dealt with by the zoning authorities does not furnish a reason for granting him a variance. See Valicenti's Appeal, 298 Pa. 276, 283-84; Friedman et al. v. Exley et al., 57 D. & C. 586.

That the board indicates (through its chairman) it might be moved to grant rear-yard variances upon installation of more bathrooms does not result in an abuse of discretion. See Zoning Law and Practice, Yokley (1953), vol. I, sec. 144. The indication perhaps should not have been made but it does not mean the board has to grant a variance without condition attached where the circumstances are not such as to establish a right to a variance and the board has not in fact granted one. It is not a situation where a variance upon condition has been granted with the applicant seeking to strike the condition as an improper one while retaining the variance outright. Here the statutory requirements of "special conditions" and "unnecessary hardship" were not adequately established.

The fact that Mr. Hinton has been conducting the apartment house operation for several years and that he took it over from a previous owner who had been

doing the same thing does not give him the right to continue it. Continuance of a violation does not give rise to a right. The prior owner was required to apply for a variance and abide by the proper decision of the board; Mr. Hinton's rights are not greater.

There were no protestants or objectors but that does not necessarily alter the conclusion. See Lindquist Appeal, 364 Pa. 561, 565.

The situation presented by this case was for the administrative agency; its action upon it represents a proper exercise of discretion.

The decision of the board is affirmed; the appeal by writ of certiorari is dismissed.