GREGOR MENZEL et al. vs. ADELMER K. TUBBS et al.

Argued Oct. 25, 1892.  Decided Nov. 28, 1892.

**Liens of all the Parties may be Adjudged.**

Under the mechanics' lien law, (Laws 1889, ch. 200,) in an action to foreclose a lien, the court has jurisdiction to determine liens set up by any of the defendants.

**Contiguous Owners may Make Their Lots Jointly Liable.**

Two owners in severalty of contiguous city or platted lots may by their acts connect them so as to constitute one lot, within the meaning of the lien law.

**Where They Construct a Single Building on Both Lots.**

They do so connect them when they treat them as one tract for the purpose of building, as where they join in the construction of a single

building on both lots, and in such case those doing work on or furnishing material for the building will have a right to claim a lien on the whole building and both lots.

### Where one Owner so Builds with the Assent of the Other.

Such will also be the case where the owner of one of the lots constructs such single building on both lots, with the knowledge and consent of the owner of the other lot.

### The Liens in Such Cases are on Both Lots.

In such case, one who does work or furnishes material upon a part of the building situate on one of the lots may claim a lien on the whole building and both lots.

### Owners not Prejudiced by Errors in the Distribution of the Contract Price.

Where there is due a contractor a certain amount for which, less the liens allowed his subcontractors, laborers, and material men, he is entitled to a lien, and the court allows the liens of such subcontractors, laborers, and material men to an aggregate less than the amount for which the contractor would otherwise be entitled to a lien, and deducts that aggregate from such amount, allowing him a lien only for the remainder, the owner is not prejudiced by error in determining the amounts due the subcontractors, laborers, and material men, and cannot complain.

### Bill of Particulars, when Need not be Filed.

Where a pleading for a mechanic's lien sets up but a single item no bill of particulars need be filed.

### Findings of Fact Supported.

Various findings of fact *held* supported by the evidence, and various assignments of error of no special importance disposed of.

APPEAL FROM TAXATION OF COSTS.

Decided Dec. 22, 1892.

### Costs and Disbursements in Lien Cases, How Taxable.

On an appeal in a mechanic's lien case, to which several lien claimants are made respondents, the appellant, on prevailing here against one of the respondents, cannot tax as a disbursement against him the cost of those parts of the return, paper book, and brief which relate only to the controversy between the appellant and other respondents.

### One Joint Bill Allowed to the Clients of one Attorney.

In such appeal each prevailing respondent is entitled to costs and disbursements, except that, where several appear by the same attorney, or attorneys, but one bill can be allowed to all so appearing.

Appeal by defendants, A. K. Tubbs and Ella F. Tubbs, his wife, from a judgment of the District Court of Hennepin County, *Lochren,* J., entered January 30, 1892.

The plaintiffs, Gregor Menzel and Samuel T. Ferguson, commenced this action to foreclose their lien for iron beams, columns, stirrups, prismatic lights, &c., furnished the defendants Tubbs and wife in 1890, at the agreed price of $1,032.31. They were to be used and were used in the construction of a three-story brick block of buildings which Tubbs and wife were putting up in Northeast Minneapolis. J. C. Brewer, contractor for the brick and mason work, and those who furnished materials for or did work under him, and all other lien claimants were also joined as defendants and appeared, and by their several answers asserted their respective claims. The issues were tried October 5, 1890. Findings were filed and judgment entered establishing the amount due upon each of the several liens and directing a sale of the property by the sheriff and payment of the liens from the proceeds. The owners, Tubbs and wife, alone appealed.

*Little & Nunn* and *J. O. Pierce,* for appellants.

*George H. White, Alvord Egelston, A. B. Darelius, Samuel L. Baker, L. E. Stetler, Roberts & Baxter,* and *Fletcher, Rockwood & Dawson,* for respondents.

GILFILLAN, C. J. This is an action to enforce a mechanic's lien commenced against the owners and a large number of other defendants, who, as the complaint alleges, have or claim some interest in or lien on the real estate. Many of these defendants filed answers setting forth mechanics' liens, and asking enforcement of the same.

The first question in the case arises on these answers, the owners defendant insisting that the court below had no jurisdiction to determine the liens thus set forth as between them and the lien claimants so answering; their argument being that each answer setting forth and seeking enforcement of a lien is, in effect, a separate suit by the lien-claiming defendant against the owner defendant, and that the only way in which a party can be brought into court and required to answer to the claim of another is by service of summons, under the pro-

visions of 1878 G. S. ch. 66. Confining ourselves strictly to statutory rules, it is apparent that, as applied to actions to enforce mechanics' liens, the inference drawn from these propositions, to wit, that each lien claimant must himself issue and have served a summons, is incorrect; for it is beyond question that the statute (Laws 1889, ch. 200) intends that, when an action is brought by any mechanic's lien claimant, it shall be a proceeding to enforce all such liens on the same property, the holders of which choose to appear or who may be required to appear therein. When not named as plaintiffs, they appear and make their claim by filing their answers, of which all parties to the action must take notice. That being the nature of the action, the owner has notice by the service of the summons that he may be called on to meet those claims, and that he is brought into court for that purpose, for (Laws 1889, ch. 200, § 10) the summons must state that the action is for the foreclosure of a mechanic's lien. The action, as the owner is thus apprised, is one to marshal the liens upon the property, and, being in court for that purpose, he has notice of each lien claim by the filing of the answer. The objection is not well taken.

The property upon which the building was constructed consisted of lot three, (3,) block fifteen, (15,) in the Mill Company's addition to the town of St. Anthony Falls, owned in severalty by the defendant Adelmer K. Tubbs, and the contiguous forty-four (44) feet of lot four, (4,) in the same block, owned in severalty by the defendant Ella F. Tubbs. Upon this fact, to wit, the severalty of ownership, seems based the principal objection to the liens which are claimed to rest on the entire property as one lot or tract, within the meaning of the lien law. The proposition of the owners is, as we understand it, that, where two contiguous pieces of land are owned by different owners in severalty, they cannot, within the meaning of that law, be one "lot." The objections to the sufficiency of the complaint and of the various answers must rest on that proposition, carried to the extent that the owners cannot make the separate pieces, thus owned in severalty, one "lot," even by their joint contract for the construction of one building covering both pieces.

What the word "lot" in the lien statute means has been several

times considered by this court, and it has always been held that it is not synonymous with city lot or platted lot, but that it may include more and may include less than a lot as platted. *Carpenter* v. *Leonard*, 5 Minn. 155, (Gil. 119;) *North Star Iron Works Co.* v. *Strong*, 33 Minn. 1, (21 N. W. Rep. 740;) *Smith* v. *Headley*, 33 Minn. 384, (23 N. W. Rep. 550;) *Lax* v. *Peterson*, 42 Minn. 214, (44 N. W. Rep. 3;) *Glass* v. *St. Paul Park Carriage & Sleigh Co.*, 43 Minn. 228, (45 N. W. Rep. 150.)

In the Carpenter Case it was held that two pieces separated by a street, one of them not owned by the owner of the building, were one lot.

What will unite two or more platted lots so as to constitute one lot, within the lien law, has heretofore been considered by us, and whether they can be so united, when the platted lots are owned in severalty, was before us to determine in *Miller* v. *Shepard*, 50 Minn. 268, (52 N. W. Rep. 894.) Where they were owned by the same person, it was held in *Smith* v. *Headley*, *supra*, that how much (not exceeding one acre) should be included in the "lot" might depend upon the character of the building, and the necessity of more land than that on which it stands for its proper and convenient use, and the situation of such other land; and in *Lax* v. *Peterson*, *supra*, where the owner of two city lots had made one entire contract for the erection of four separate buildings on them, it was held that the parties had thereby connected and treated the whole as one tract or estate, so as to give liens on the whole; and it was said that had the houses been contiguous, so as to form a solid block, according to all the authorities the lien would have extended to the whole property, although consisting of different city lots, and although the different parts of the block were designed to be used separately, and not as appurtenant to each other. If one owning two city lots may connect them so as to constitute one under the lien law, by erecting one building on them, or by otherwise treating them for the purpose of building as one tract or estate, we see no legal reason why separate owners of contiguous lots may not do the same thing. While it may in such a case require stronger proof of treating the lots as one tract than in the case of one person owning both lots, we do not hesitate

to say that, where the separate owners have so treated them for the purpose of building, they may be so treated for the purpose of the liens accruing in consequence of building. It was so held in *Miller v. Shephard, supra,* where the separate part of the building on each lot was to be used and enjoyed exclusively by the owner of the lot.

There is nothing in section 7 of the statute which necessarily conflicts with or limits this proposition. In the phrase, "one general contract with the owner or owners of the lot or lots," the words "one general contract" cannot be held to mean an entire contract to wholly erect and complete the building, to furnish all the material, and to do all the work upon it. A case might be supposed of a contract to furnish material for and do all the work but the painting, and the painting either let to several contractors or done by the day's work, the owner furnishing the material. In such a case, it cannot be supposed the contractor who does all but the painting, and who has put in his material and labor upon all parts of the building indiscriminately according to his contract, must seek his lien on the lots separately, merely because his contract does not include all the work. The section is treating of the case of two or more buildings united together, or of separate buildings, on the same or contiguous lots, and the word "general" is used with reference to such two or more or separate buildings; so that to support a claim of lien upon all of them the contract must be entire, so as to include them all, in order to connect them and make them one for the purpose of liens. And it would be a strict and narrow interpretation of the words, "owner or joint owners of the lot or lots," to hold that, where there are more owners than one, each must have an interest in every part of the real estate. It is more in accord with the general purposes of the law to hold that, if the contract be with all the owners, whether they be several or joint, of all land on which the lien is claimed, it is enough. It might, however, be sufficient, for the purposes of this case, to say that the section is treating of two or more buildings, and not of the case of a single building, as that in this case was, according to the allegations of the pleadings and the findings of the court below.

The pleadings of the plaintiffs and the lien-claiming defendants allege the construction of one building, though situate on two lots owned in severalty by the defendants Tubbs, and contracts with them jointly for doing the work or furnishing the material for which the liens are claimed.    The findings of the court were "that during all said times the defendant Adelmer K. Tubbs was, with the knowledge and consent of said Ella F. Tubbs, engaged in the erection and construction of a block of five stores, with dwelling apartments above, covering the entire front of said real estate, and facing upon Fifth St. N. E., in said city of Minneapolis; that said block of stores is one entire building in its construction, three stories in height, under one roof, and three of the stores cover lot three, (3,) and the other two stores cover said forty-four (44) feet in width of said lot four, (4.)"

The owners (defendants) except to these findings as not justified by the evidence.    But, after examining it, we find they are.    Without specifying any part of it in detail, it is apparent from the entire evidence that the block was not only in appearance one entire building, but that it was actually constructed as such, the labor and material, for the most part, going in all over it indiscriminately.    Had the land belonged to the same person, no one would have suspected, from seeing the building and the manner in which the construction went on, and knowing how the material was procured and labor contracted for, that it was not one entire building.    The several ownership of the land in such a case is a fact to be considered in determining whether the building is one, but it is not conclusive.

In respect to some of the liens claimed, the court finds a joint contract by the two owners for the labor or material, just as alleged in the answers; but, as to the greater part of the lien claims, there is no finding upon which to support them, except those above quoted.

So far as Adelmer K. Tubbs is concerned, there can be little question on those findings that his lot three (3) is subject to liens for material furnished and labor done for the entire building.    There is more question as to subjecting Ella F. Tubbs' forty-four (44) feet to

liens for the entire amount; that is, of holding the liens as resting equally on the whole real estate. The building was, according to the findings, erected by Adelmer K., Ella F. Tubbs taking no active part, but knowing of and consenting to what was done by him. Under section 5 of the statute, he must be held to have acted on her behalf so far as concerned her interest in the tract, which for the purpose of building they had made one "lot." It is not decisive that the contracts for building were made in the name of Adelmer K., and that the part of the building on each lot was intended to be used exclusively by the owner of that lot. Both of these features were in the case of *Miller* v. *Shephard, supra,* yet it was held that the lien claimant might claim a single lien on the whole, or, if he could show what part of the labor and material went into the part of the building on each separate lot, he might claim separate liens; and it was also held that, if justice to other claimants or other persons interested required it, the court might apportion the lien to the separate lots. That decision covers the question we are discussing.

In respect to the claim of Brewer and of his subcontractors, the evidence would have required a finding, had the court complied with the request for more specific findings, that, contemplating building on the forty-four (44) feet of lot four (4) then owned by Ella F., and the purchase by himself of lot three, (3,) and the extension of the building over it in case he purchased, Adelmer K. agreed with Brewer for the brickwork on the forty-four (44) feet, and when he purchased lot three (3) agreed with him for the brickwork on that lot. Such specific findings, taken in connection with the finding that the building was one, would have raised this question. When a single building is erected on two platted lots, and the lien claimant has done his work on, or furnished lien material for, only that part of the building standing on one of the lots, is his lien confined to that lot, and the part of the building standing on it, or does it extend to the whole building and the lots on which it stands? The question suggests the answer. The statute (section 1) gives the lien upon the building (not upon part of it) and the land on which it is situate. To hold, in the case of a single building, that the lien must be limited to the part of it on which the labor or material is bestowed, be-

cause that part is situate on one platted lot while the remainder is on another, would be contrary to the statute. The lien is on the whole building, irrespective of the part of it on which the labor or material is bestowed. The specific findings would not have affected the result.

An assignment of error is made to the twenty-seventh finding of fact as not sustained by the evidence. That finding states the reasonable value of the work and material of Brewer. It is abundantly sustained by the evidence. The assignment does not present the question sought to be raised here, to wit, that because of a special contract as to price not performed by Brewer, he was not entitled to recover upon the *quantum meruit*. It is presented, however, upon the objection to the proof of the value. It appears from the evidence that Brewer first made a proposition, accepted by Tubbs, to do the brickwork on the forty-four (44) feet at a specified price, and afterwards made a proposition, accepted, to do the remainder at a specified price, nothing being said in the propositions as to the time or manner of payment. From Brewer's testimony, the court might find that the parties subsequently agreed that payments should be made every two weeks, and that Tubbs failed to make such payments; in other words, might find that Tubbs, not Brewer, had violated the contract, and in that event the latter might recover the reasonable value.

Exception is taken to the sufficiency of the evidence to sustain the court's findings of the amounts due the several lien claimants, subcontractors under Brewer. The court finds the balance due for Brewer's work and material, deducts from that the aggregate of the sums allowed the subcontractors, and allows Brewer a lien for the remainder. If the deduction had not been made, he would have had a lien for the whole amount. So that, if there was any error in allowing any part of that amount to any of the subcontractors, it operated to the prejudice of Brewer, but not to the prejudice of the owners; and they cannot complain, for, while it would diminish his lien, it would not increase the burden on their property.

Objection is made to the claim of the defendant Sedgwick that he did not file a bill of particulars. His claim was but a single item

stated in his answer, and no bill of particulars was necessary. Such a bill is required only to set forth in detail the items, making up a general charge in the pleading.

The account books of plaintiffs seem to have been verified as required by the statute.

When husband and wife are parties to an action, there is no reason why either may not be examined as a witness for or against himself or herself alone. The statute provides only that neither shall be examined for or against the other without the consent of the other.

So far as Ella F. Tubbs testified in answer to questions put to her and objected to, her testimony could operate only against herself. None of it could affect the case for or against her husband. So far as he testified in answer to questions put to him and objected to, the facts, so far as material, were so fully proved by other uncontradicted evidence that his testimony, even if erroneously admitted, did not prejudice.

From what took place at the trial, it is clear that the amount of the claim of John O. Lindquist was admitted. When the court entered on that claim, the owners' counsel said: "I think. there is no contest as to the amount of the lien of John O. Lindquist." From that, and the conversation that followed, the court and Lindquist's counsel were justified in understanding, as they undoubtedly did, that his claim was not disputed.

Objection is made that the court below did not find as a fact that Brewer seasonably filed for record his lien statement. In view of the evidence, the failure to so find was clearly an oversight. The most that, under the circumstances, we could do because of that failure would be to send the case back, so far as Brewer's claim is concerned, with instructions to the court below to find from the evidence how the fact was. But the fact of filing having been conclusively proved, so that there was no controversy upon it, the court could find but one way, to wit, that it was filed, and sending the case back for such a finding would be but matter of form. We will consider the fact as though it had been stated in the finding.

There are some minor points made by the appellants, but we do

not deem any of them of sufficient importance to require special mention in this opinion.

Judgment affirmed.

GILFILLAN, C. J. Appeals from taxation of costs upon the decision of an appeal in a mechanic's lien case. A large number of lien claimants were made defendants, and they presented and were allowed their claims. The owners (defendants) took an appeal, making the plaintiffs and the lien-claiming defendants parties to it. In this court the decision of the court below was affirmed as to all except three of the lien-claiming defendants, as to whom it was reversed, by reason of their failure to appear when the case came on for argument. The appellants seek to tax as disbursements against them the entire cost of the return, paper book, and appellants' brief.

There were some questions raised, common to all the respondents, and some that related only to particular respondents, and in no way affected the others. The cost of those parts of the return, paper book, and brief which affected the controversy between appellants and the three respondents as to whom there was a reversal is properly chargeable to them. But to charge them with the cost of those parts relating only to the controversy between appellants and other respondents would impose on them the cost of litigation between other parties, in which they are not interested. We have therefore allowed to stand against them the cost of only so much of the return, paper book, and brief as relates to the questions between them and appellants. The party objecting to any part of such an item ought to point out what part does not affect his litigation, and not leave it for the court to find it out by going over the paper book and brief; and, though we have not insisted on it in this case, we intend to require it in the future.

Costs and disbursements here are properly allowable to each prevailing respondent, except where several appear by the same attorney or attorneys, in which case but one bill can be allowed to all so appearing.

(Opinions published 53 N. W. Rep. 653, 1017.)