No. 19,482.

HAROLD G. WELLMAN, ET AL. *v.* LEO HAUG, ET AL.

(360 P. [2d] 972)

Decided April 10, 1961.

Mr. EMORY L. O'CONNELL, for plaintiffs in error.

Messrs. ZARLENGO, ZARLENGO and SEAVY, for defendants in error.

*In Department.*

Opinion by Mr. Justice Sutton.

The parties appear here in the same order as they appeared in the trial court, and will be designated accordingly.

In their complaint plaintiffs alleged ownership of certain lots in a Jefferson County, Colorado, subdivision known as Wellkring Park Subdivision; and that defendants were the owners of two lots in the same subdivision.

It was further alleged that on or about April 28, 1954, defendants and others entered into certain protective covenants which were recorded on or about said date and which have remained of public record. One of said covenants reads as follows:

"A. No structure shall be erected, altered, placed or permitted to remain on any lot other than one single family dwelling not to exceed one and one-half stories in height, except that two family dwellings not to exceed one and one-half stories in height may be erected, altered, placed or permitted to remain on any building site having a width at the front building set back line of not less than 100 feet nor an area of not less than 12,500 square feet. Other buildings incidental to residential use may be erected, altered, placed or permitted to remain on any lot having a dwelling unit thereon. The exterior of any structure erected, altered or placed on any lot shall be predominantly brick, stone or glazed tile."

It was also alleged that the property of the defendants is in an area zoned by Jefferson County zoning authorities as Residential 2; that among other zoning regulations applicable to the subject property there is the following:

"A. Use Regulation.

"No building or land shall be used and no building shall be hereafter erected, converted or structurally altered unless otherwise provided herein except for one or more of the following uses:

* * *

"6. Private stable for not more than four (4) horses; private barn for not more than two (2) animals such as cows, sheep or milking goats. However, the total number of animals as listed above that may be kept is limited to one such animal for each six thousand (6,000) square feet of lot area. * * * "

It was alleged that defendants have erected and maintained structures on their property in violation of the restrictive covenant and have maintained horses on said premises in violation of the zoning regulation quoted above, all to plaintiffs' special damage. Plaintiffs sought an order restraining defendants from continuing said alleged violations and for other relief. Following trial to the court without a jury, judgment was entered in favor of defendants, and plaintiffs are here on writ of error.

The record discloses that defendants at one time owned what is now platted as lots 15 through 30, Wellkring Park Subdivision, and are presently the owners of lots 15, 16, 17, 28, 29 and 30 thereof. From about 1936 to 1956 defendants had maintained their residence in a frame house situate on lot 16. In 1956 their present home was constructed on lot 15. On lot 17, contiguous on the south to both lots 15 and 16, about the year 1936, there was constructed a frame structure originally used as a chicken or pigeon house, then for cattle and sheep, and from 1957 on as a stable for their horses. Since 1957 defendants have maintained two riding horses for the use of their children. During the year the horses are kept in the enclosure on lot 17 and also on lots 28-30 across the street, the practice being from April through September to pasture them the principal part of the day on lots 28-30, and during the winter months to keep them on lot 17.

In 1954 defendants sold lots 18-27 to the plaintiffs, who then resold them, except for lots numbered 20, 21 and 27. During 1954 defendants signed the restrictive covenant pertaining to this subdivision.

Thus there are two issues presented here for determination: First, whether the keeping of the two horses by

defendants is a violation of the zoning regulation. Second, whether the structure situated on lot 17 constitutes a violation of the restrictive covenant.

We consider first the matter of the horses. The zoning regulation quoted above limits the total number of animals that may be kept to one animal for each six thousand square feet of lot area. This question involves a definition of "lot area" as used in the regulation. The trial court held that the regulation "contemplates the over-all area of the lot," i.e., the actual use of owned contiguous tracts, and "does not exclude that area actually devoted to buildings and other uses." The court then concluded that there was sufficient space for the keeping of horses.

The evidence is that defendants own contiguous lots 15, 16, and 17. On lot 15 is their residence, on lot 16 is their former residence, and on lot 17 their two horses are stabled. The total space in these three contiguous lots amounts to 34,512 square feet — more than enough to justify keeping two horses under the zoning regulations. Moreover, defendants also own lots 28, 29 and 30, located across the street from the other three lots. The sole use made of these lots is for the pasturage of the horses when not confined on lot 17. The total space involved in these three lots amounts to 40,750 square feet. Thus the total over-all land owned by defendants amounts to 75,262 square feet, though for this purpose the 40,750 square feet cannot be counted because not contiguous.

Plaintiffs urge that since the horses being stabled on lot 17, this lot alone must be considered in determining the permissible area. Because lot 17 contains 11,000 square feet, rather than 12,000 as required by the regulation, they say we must find that there is a violation of the zoning regulation. Such construction is unwarranted by the language used.

The term "lot area" as used in the regulation is not necessarily synonymous with "platted lot," and may include more, and under certain circumstances less, than

a lot as platted. See *Menzel v. Tubbs* (1892), 51 Minn. 364, 53 N.W. 653. Under zoning practice and in the present case it means any contiguous quantity of land in the possession of, owned by, or recorded as the property of the same claimant, person or company. See *Griffin v. Denison Land Co.* (1909), 18 N.D. 246, 119 N.W. 1041.

Passing now to plaintiffs' contention that the structure situated on lot 17 violates the restrictive covenant.

Paragraph 3 of the covenant provides in part: " * * * Other buildings incidental to residential use may be erected, altered, placed or permitted to remain on any lot having a dwelling unit thereon. * * * "

The existence of stables in the subdivision is acknowledged and the apparent intent is for them to continue in existence. Paragraph 7 provides as follows:

"No trailer, basement, tent, shack, garage, barn, or other outbuildings erected or placed in this development shall at any time be used as a residence, temporarily or permanently nor shall any structure of a temporary character be used as a residence."

The structure here in question is certainly not temporary, having stood on this lot for more than twenty years, and was there when the subdivision was platted in 1954. At the time of subdividing, defendants resided in the house on lot 16 and subsequently constructed and moved into the house on lot 15.

It is not contended that the structure on lot 17 is being used for residential purposes. Its use is that of a stable.

The only remaining question is interpretation of the word "lot," as used in the covenant. We have already held that "lot" as used in the zoning regulation is not necessarily synonymous with platted lot but may include contiguous land under common ownership. See 34 L.R.A. (N.S.) 732. As used in the covenant it clearly refers to a tract comprising one or more lots containing a minimum number of square feet, depending upon the character of the residential structure to be erected there-

on, and permits other buildings incidental to such residential use to be erected or permitted to remain. The stable here constitutes such incidental use.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE MCWILLIAMS concur.