John C. and Ruth M. Maher et al., appellees, v. Park Homes, Inc. and James R. Underfere, appellants.

No. 52057.

(Reported in 142 N.W.2d 430)

MAY 3, 1966.

Wisdom, Sullivan & Golden, of Des Moines, for appellants.

Murray & Yost, of Des Moines, for appellees.

GARFIELD, C. J.—Defendants Park Homes, Inc. and James R. Underfere, owner of the East 140 feet of Lot 10, Golf and Country Club Plat 5, part of the City of West Des Moines, propose to build a dwelling thereon. Each of three plaintiffs owns a residence on an adjoining tract. The fourth plaintiff owns a residence on a lot that corners with the Underfere tract. Plaintiffs brought this action in equity to enjoin the proposed construction as in violation of building restrictions on all lots in the plat. From decree as prayed on stipulated facts defendants have appealed.

The entire plat contains 35 numbered residence lots in addition to Lots A, B and C which are three streets each 66 feet wide. Lot A is also designated 18th Street and Lot B 16th Street, both running north and south. To avoid confusion we refer to them as streets rather than lots. There is no street called 17th Street. Each residence lot has a frontage of 100 feet on a north-south street. There are three rows of nine lots each which are 337.14 feet deep east and west. The fourth row, on the east, contains eight residence lots and Lot C, an east-west street between Lots 32 and 33. Depth of Lots 28 to 35 and C varies from about 331 feet to 335 feet, perhaps because of surveying inaccuracies.

Although not designated on the plat, Woodland Avenue runs east and west along the north side of the plat adjoining Lots 9, 10, 27 and 28. It was stipulated the East 140 feet of Lot 10, marked by a large X on the plat, infra, became a separate

parcel about May 1, 1965. We take this to mean defendant Underfere then became owner.

The accompanying plat of Golf and Country Club Plat 5 may help visualize what is here said.

The small rectangles marked 1, 2, 3, and 4 inside Lots 10, 11, 26, and 27 on the plat represent the approximate location of plaintiffs' residences. Each is set back 100 feet from the lot line adjoining the street it faces, as are all houses in the subdivision along either 16th or 18th Street. The houses numbered 1 and 2 on corner Lots 10 and 27 are set back 35 feet south of the north lot lines along Woodland Avenue.

These are the building restrictions made part of the plat of the subdivision, filed June 10, 1949, which plaintiffs claim would be violated by erecting a dwelling on the rear 140 feet of Lot 10:

"(a) All of said lots shall be used solely for residential purposes, and no structure shall be erected, or occupied on any of said lots other than single family dwellings not to exceed two and one-half stories in height and garages or auxiliary buildings for the use of the occupants of said dwellings. No residence shall be erected or occupied on any tract of land in said addition unless said tract of land shall have at least 100 feet of street frontage.

"(b) No building shall be erected on any lot nearer than 100 feet from the front lot line, and no detached building shall be erected on any corner lot nearer than 40 feet from the street lot line nor nearer than 25 feet from the rear lot line."

The part of these restrictions (all of which are attached to plaintiffs' petition as an exhibit) quoted in the petition proper is: "No building shall be erected on any lot nearer than 100 feet from the front lot line, * * *" and it is there alleged any construction by defendants will violate this restriction.

On the facts above summarized the trial court ruled the question to be resolved is the meaning of "the front lot line"; the front of a lot is that part which faces a street or streets, citing City of Des Moines v. Dorr, 31 Iowa 89, and Staley v. Mears, 13 Ill. App.2d 451, 142 N.E.2d 835, 837; while the law favors the free legal use of land by its owner and frowns upon restrictive covenants, they are recognized and enforced in equity, where the parties' intent is clear and the restrictions are reasonable, citing Jones v. Beiber, 251 Iowa 969, 971, 103 N.W.2d 364, 365; no ambiguity is found in these covenants and their plain

language must be given effect; construction of any building on the East 140 feet of Lot 10 would be contrary to the restrictions pleaded and plaintiffs are entitled to the injunction sought.

I. We are not satisfied the only question in the case is what may be meant by "the front lot line" of the East 140 feet of Lot 10. If this parcel may properly be called a lot, its front lot line is doubtless the side which abuts Woodland Avenue, the only street the parcel abuts. We think the question for decision is whether the building restrictions plaintiffs invoke, taken as a whole, clearly prohibit the erection of a dwelling on this parcel. We cannot find they do.

We understand defendants admit the tract in question must be used solely for residential purposes, that the dwelling they propose to erect must be a single family one not to exceed two and one-half stories high, with garages or auxiliary buildings for use of the occupants of the dwelling only. These are the requirements of the first sentence of paragraph (a) of the restrictions, supra. It is to be noticed this sentence provides no structure shall be erected "on any of said lots other than single family dwellings * * *," not "other than a single family dwelling."

Indeed the restrictions nowhere prohibit the erection of more than one dwelling on a single platted lot provided the tract on which it is erected has at least 100 feet of street frontage as required by the second sentence of paragraph (a). The tract in question has 140 feet of street frontage. It is somewhat significant that this second sentence twice refers to "tract of land", nowhere to "said lots" as does the first sentence.

Nothing in the stipulated facts shows any violation of paragraph (a). In fact the reference to "dwellings" in the first sentence and to "tract of land" in the second gives some indication defendants do not intend to violate anything expressed in the restrictions as a whole.

We consider now the language in paragraph (b) on which plaintiffs mainly rely and the trial court held defendants would violate—"No building shall be erected on any lot nearer than 100 feet from the front lot line, * * *." It seems to us that for plaintiffs to prevail, "lot" must be construed to mean "tract of land" or other term of similar meaning such as "parcel." By the

subdivider's use of "said lots" in the first sentence of paragraph (a) and "tract of land" in the second he (or it) may properly be held to have intended a distinction between the two terms.

If the owner of Lot 10 had himself erected a dwelling on the rear, without a conveyance thereof, there would be little if any room for a claim the restrictions were thereby violated. Severance of the rear 140 feet should not be held to create an added restriction.

It is admitted, as it must be, "the front lot line" of each platted lot is the line along one of the north-south streets. To construe the restrictions as requiring a setback of 100 feet from . Woodland Avenue as well as from one of the north-south streets would of course provide a double restriction and prohibit erection of a dwelling on any of the four lots abutting Woodland. The owners of Lots 10 and 27, now owned by two plaintiffs, evidently did not so construe the restrictions when a home was erected on each lot only 35 feet south of Woodland. Erection of a dwelling with its front less than 100 feet south of Woodland would seem, as a practical matter, not to detract from the character of the neighborhood more than dwellings with their side dimension so located.

Lots 10 and 27 as well as 9 and 28 are corner lots that front on either 18th or 16th Street, with the side or lengthwise dimension along Woodland. The second clause of paragraph (b) clearly indicates the subdivider had in mind existence of these corner lots. Yet the sole restriction expressly made applicable only to them is that "no detached building shall be erected on any corner lot nearer than 40 feet from the street lot line nor nearer than 25 feet from the rear lot line." No violation of this provision is claimed or shown.

■ II. Precedents too numerous to cite individually hold restrictions on the free use of property are strictly construed against the parties seeking to enforce them, will not be extended by implication or construction beyond the clear meaning of their terms and doubts will be resolved in favor of the unrestricted use of property. 26 C. J. S., Deeds, section 163a; 20 Am. Jur. 2d, Covenants, Conditions, etc., section 187. See also Jones v.

Beiber, supra, 251 Iowa 969, 971, 972, 103 N.W.2d 364, 365; Annotation, 30 A. L. R.2d 559, 560.

Volume 20 Am. Jur.2d, supra (page 757), cites Beeler Development Co. v. Dickens, 254 Iowa 1029, 1033, 1034, 120 N.W.2d 414, 416, for the proposition, "In some jurisdictions there appears to be a trend away from the rule of strict construction." The Beeler opinion properly points out that the rule of strict construction obtains only where the wording of the restrictions is ambiguous. We may say too that doubts to be resolved in favor of the unrestricted use of property should be reasonable.

Under the construction of these restrictions plaintiffs contend for and the trial court upheld, no building may be erected on the parcel in question—it is useful mainly as something on which to pay taxes. This fact has been noted by the courts as a ground for determining that a corner lot fronted on only one of the adjoining streets. 20 Am. Jur.2d, Covenants, Conditions, etc., section 242, page 809; Annotation, 30 A. L. R. 2d 559, 561, and citations. Such a drastic result should not be reached unless unambiguous language in the restrictions clearly leads thereto. As before indicated, we cannot find such language here.

Another principle has some application. As a general rule injunctive relief is granted sparingly, with caution and only in clear cases. Amdor v. Cooney, 241 Iowa 777, 783, 43 N.W.2d 136, 140, and citations; Dawson v. Laufersweiler, 241 Iowa 850, 859, 43 N.W.2d 726, 732; 43 C. J. S., Injunctions, section 15; 28 Am. Jur., Injunctions, section 25, page 516. See also Staley .v. Mears, supra, 13 Ill. App.2d 451, 142 N.E.2d 835, 838.

Since plaintiffs admit Lot 10 fronts on 18th Street rather than Woodland it is perhaps unnecessary to cite authorities supporting this view. 20 Am. Jur.2d, Covenants, Conditions, etc., section 242, states: "In most cases in which the question has arisen, covenants in deeds to corner lots providing that buildings should be at least a designated distance from the front lot line have been held to make such restriction applicable only to the side on which the building faces, and not to both sides abutting streets." Substantially the same statement, with

supporting decisions, appears in annotation, 30 A. L. R.2d 559, 561, 562.

In 26 C. J. S., Deeds, section 164(2), pages 1113, 1114, contains this: " 'Front property line' within a restriction prohibiting the location of buildings nearer than a specified distance from such line, does not apply to a side street adjacent to a corner lot fronting on an intersecting street. * * * Where a lot is a corner lot and it is doubtful whether the restriction applies to a cross street, it will not be enforced as to such street."

City of Des Moines v. Dorr, supra, 31 Iowa 89, the first precedent cited by the trial court and in plaintiffs' brief, deserves comment. It does not involve a restrictive covenant but a provision in a lease of a corner lot that the lessee should "Keep up the *sidewalks* in front of the same in accordance with ordinances of the city, * * *." The lot was situated 22 feet on Walnut and 132 feet on Sixth Street. Front entrance to the storehouse was on Walnut with a side entrance on Sixth. The lessee paid for the sidewalk along Walnut but refused to pay for a sidewalk along Sixth which he and others petitioned the city to build. We affirmed a judgment against him for cost of the Sixth Street sidewalk.

The Dorr opinion emphasizes the lessee's obligation under the lease to keep up the *sidewalks* and the inequity of allowing him to avoid paying for an improvement his efforts induced the city to build for his benefit. The opinion contains the statements that every corner lot necessarily has two fronts and 2) the front of a lot is the part which faces a street or streets. The trial court here cited it for this second statement.

The Dorr case has been rather widely cited by other courts for one or both of the statements just referred to. Morrison v. Hershire, 32 Iowa 271, 279, cites it for the first one in holding the cost of paving both streets adjoining corner lots was properly assessed to them. We have no doubt the Dorr case was properly decided under the issue and facts there but it has little if any application here. See discussion in Broeder v. Sucher Brothers, Inc., 331 Mich. 323, 49 N.W.2d 314, 316, 317, 30 A. L. R.2d 554, 557, and annotation, 559, 569, 570.

Plaintiffs cite three precedents for their brief point that

"lot" in restrictive covenants can be synonymous with "tract" or "parcel" and is distinguished from "platted lot." We do not regard them as in point here or contrary to anything we have said.

In Wellman v. Haug, 146 Colo. 186, 187, 190, 360 P.2d 972, 973, 975, the covenant provided "No structure shall be erected, altered, placed or permitted to remain on any lot other than one single family dwelling * * *." The court pointed out that "lot" as used in zoning regulations is not necessarily synonymous with platted lot and held "As used in the covenant it [lot] clearly refers to a tract comprising one or more lots containing a minimum number of square feet * * *."

In Menzel v. Tubbs, 51 Minn. 364, 53 N.W. 653, 17 L. R. A. 815, two owners in severalty of adjoining lots, one platted and the other a part of another platted lot, contracted jointly for the erection of one building covering both pieces. It was held both parcels could be called "lot" within the meaning of the mechanics' lien law—the word "lot" in that law is not synonymous with city lot or platted lot where the two owners treated the two pieces as one. The case is much like Sheldon v. Chicago Bonding & Surety Co., 190 Iowa 945, 181 N.W. 282, which cites it with approval, only in the Sheldon case each owner of contiguous lots made a separate contract for construction of the part of a single building covering his lots.

Griffin v. Denison Land Co., 18 N. D. 246, 119 N.W. 1041, involves validity of a tax sale as contiguous tracts of two quarter sections of land which touched only at the corner. It was held they were not contiguous and the tax sale was therefore invalid.

We think defendants should be willing to place their dwelling at least 35 feet south of Woodland Avenue since the homes on the tracts adjoining theirs on the west and east are set back from Woodland that far. This should leave ample room for construction of defendants' dwelling.

The decree is reversed and the cause remanded for decree in harmony with this opinion.—Reversed and remanded.

All JUSTICES concur except RAWLINGS and LARSON, JJ., who dissent.

1300

RAWLINGS, J.—I respectfully dissent.

Clearly the construction of a dwelling unit on the east 140 feet of Lot 10 would serve to make Woodland Avenue the front lot line for any such structure.

No easement is reserved for access to 18th Street (Lot A) across the west 197.14 feet of Lot 10, and there is nothing to indicate this means of access is even contemplated.

Under these circumstances it is self-evident any residential structure built on the east 140 feet of Lot 10 would, of necessity, front on Woodland Avenue. City of Des Moines v. Dorr, 31 Iowa 89, 93; 26 C. J. S., Deeds, section 164(3), page 1117; 20 Am. Jur.2d, Covenants, section 242, page 809; and annotations 30 A. L. R.2d 561.

And since the plat, Exhibit B, discloses the north-south dimension of Lot 10 is only 100 feet, it also becomes evident no dwelling could be constructed on this tract without being nearer than 100 feet from Woodland Avenue.

It follows that any house placed on the rear or easterly 140 feet of Lot 10 facing Woodland Avenue would violate building restriction (b) which provides in part: "No building shall be erected on any lot nearer than 100 feet from the front lot line, * * *."

But there is another factor to be considered.

The record is meager but still discloses this area was developed for restricted residential purposes. It also discloses the restriction quoted above is a covenant running with the land for the benefit of all who might build, purchase or occupy homes in the area.

The general building plan discloses an intention to provide for all those acquiring homes in that particular community some reasonable degree of protection for the investment and the right to live in a neighborhood such as was contemplated at time of purchase. 26 C. J. S., Deeds, section 163, page 1094; 20 Am. Jur.2d, Covenants, section 186, page 754; and annotations, 30 A. L. R.2d 560.

I deem the law and the equities to be with plaintiffs and would affirm.

LARSON, J., joins in this dissent.