## MULROY V. CHURCHMAN ET AL.

1. **Taxation:** EXEMPTION: RELIGIOUS USE: BURYING-GROUND. Where the title to 40 acres of land was held in trust for a religious body, but the land was not used for religious purposes, except that about one-half acre in a corner was used as a burying-ground, *held* that only the half acre so used was exempt from taxation, under section 797 of the Code.

### *Appeal from Warren District Court.*

### .WEDNESDAY, APRIL 18.

THIS is an action at law to recover possession of land. The amount originally in controversy was forty acres. The case was before us, and was reversed, on a former appeal.. See 52 Iowa, 238. The cause being remanded, the plaintiff amended his petition, alleging that he is entitled to the immediate possession of the property in dispute, except one acre in a square form in the northeast corner thereof. The plaintiff derives his title through a tax sale in 1868, for the unpaid taxes of 1867. The defendant does not deny the regularity of the proceedings under which the tax deed was executed, but alleges that the legal title was in the bishop of the Catholic Church, for the special use and benefit of the Catholic congregation, and that the land was used as a place of burial for the dead, and was not subject to taxation. The cause was tried to the court, and judgment was rendered that the plaintiff be put in possession of said land, with the exception of one acre in the northeast corner thereof. The defendants appeal. The material facts are stated in the opinion.

*Cole & Cole*, for appellants.

*H. McNiel, Barcroft, Given & McCaughan* and *Tod-hunter & Hartman*, for appellee.

DAY, CH. J.—The court submitted a finding of facts, of which the defendants make no complaint. These facts show that James Callanan had a tax deed for the land in controversy, and that, on the 29th day of June, 1876, he made a quit-claim deed therefor to the plaintiff, and that, at the time of the sale of said land for taxes, the equitable title at least was held by Bishop Hennessy for the use of the Catholic Church. The remainder of the facts material to this controversy are as follows: "A small portion of the northeast corner of said land has been used as a place for the burial of dead—less than one-half of an acre; that some persons have been buried there more than twenty years, and their graves remain. Said burial place has been fenced on the east and on the north sides thereof, by the owners of the adjacent land inclosing their lands, and some posts have been set partly around the other sides of said place of interment, but no boards were nailed on said posts, and no other fence was made around said grave-yard, except that the whole tract of land first above described has been fenced. The whole of said tract of land was uninclosed until about six years ago, and was, prior to that time, unoccupied and unused for anything, except as above stated, and except that some years ago some grass was cut on it. On or about 1874, the whole of said tract of land was inclosed with a fence, and most of it was used for farming purposes. The evidence does not show that any of the officers of said church ordered said posts to be set where they were, nor that any officer of said church ordered that said land should be put in cultivation, nor that any officer in said church in any affirmative manner gave his consent to have said land used for farming purposes, but the members of the church in charge of the property did rent it out for farming purposes. I find from the evidence that the officers of said church must have known about the setting of said posts where they were, and about the land being used for farming purposes." Upon these facts the

Mulroy v. Churchman.

court found that all of the land, except one acre in the north-east corner, was subject to taxation. The defendants insist that the court should, upon these facts, have held, as a conclusion of law, that the whole forty was exempt from taxation.

Section 797 of the Code provides that the grounds of religious institutions and societies, devoted solely to the appropriate objects of these institutions, not exceeding six hundred and forty acres in extent, not leased or otherwise used with a view to pecuniary profit, and public grounds, including all places for the burial of the dead, are not to be taxed. Now, whilst the facts show that the tract in question was owned by a religious society, they do not show that it was devoted to the appropriate objects of such society. Indeed, so far as the facts found show, the land, with the exception of the small portion used for the burial of the dead, was devoted to the same objects, and held for the same purposes, as if it had been held by an individual. The land cannot be exempt from taxation upon the ground that it was devoted solely to the appropriate objects of a religious society. The facts show that only about one-half an acre in the northeast corner of the tract was set apart as a place for the burial of the dead. Surely the setting apart of half an acre in the corner of a forty acre tract, as a place for the burial of the dead, cannot exempt the whole forty from taxation.

AFFIRMED.