## Brosnan's Appeal.

Argued March 23, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John E. Evans, Jr.,* of *Margiotti, Pugliese, Evans & Buckley,* for appellant.

*William L. Jacob,* with him *C. W. Sypniewski,* for appellees.

OPINION BY MR. JUSTICE LINN, April 18, 1938:

This proceeding began by application to the Bureau of Building Inspection for a permit to erect a dwelling on land subjected to building restrictions by the Zoning Ordinance of the City of Pittsburgh. The permit having been granted, neighboring property owners appealed to the Board of Adjustment for its revocation. The board refused to revoke it. The protestants then filed their petition in the common pleas, pursuant to Section 7 of the Act of 1927 at P. L. 102, 53 PS section 9189. The Act provides, inter alia: "Any person or persons jointly or severally aggrieved by any decision of the board of adjustment, or any property owner, or the head of any department interested therein, may present to the court of common pleas of the county wherein said city may be located, a petition duly verified, setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty (30) days after the filing of the decision in the office of the board." "Upon the presentation of such petition, the court may allow a writ of certiorari, directed to the board of adjustment, to review such decision of the board of adjustment. . . ." "The board of adjustment shall not be required to return the original papers acted upon by it, but it shall be sufficient to return certified or sworn copies thereof or of such portions thereof as may be called for by such writ. The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from and shall be verified." It is also provided that "If upon the hearing it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence, as it may direct, and report the same to the court with his

findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm wholly or partly or may modify the decision brought up for review."

Such proceedings were had in the common pleas. Additional testimony was taken by the hearing judge. He concluded that there was error of law in granting the permit and also in refusing to revoke it. Exceptions were filed and the matter was heard by the court in banc. Pursuant to the exceptions, immaterial changes were made and the order of revocation was incorporated in the final decree. From that action, the intervener, Marie C. Miller, appealed to the Superior Court which affirmed the action of the common pleas. We also think that the order appealed from must be affirmed. The facts are fully set forth in the opinion of the Superior Court, 129 Pa. Superior Ct. 411, 195 A. 469, and need not be repeated at length.

Appellant contends that the review in the common pleas exceeded the power conferred on the court by the statute. The record does not support the contention. The court received additional testimony, as the statute expressly authorized, and, with the evidence so received before it, held, on the whole record, that the law had been misapplied by the Board in failing to revoke the permit. Whether the law has been rightly or wrongly applied is a proper inquiry in review on certiorari: *Fleming v. Prospect Park Board of Adjustment,* 318 Pa. 582, 178 A. 813. The question raised on this record does not require a determination of the boundaries of the common pleas inquiry in the "review" of "such decision of the board of adjustment" prescribed by the statute. It is sufficient to say that one of the grounds of application to the common pleas was that the law had been misapplied. The petition averred that the erection of the house would be "in violation of the law," and that it would be "in violation of the zoning ordinance of the City of Pittsburgh. . . ."

164

The appellant, who received the permit, is Marie C. Miller, who intervened in the common pleas and became a party. She is the wife of W. A. Miller, described in the record as a "speculative builder"; she is also an officer in the Miller Land Co. in which her husband is interested and which appeared as an owner in the chain of title to the land in question. W. A. Miller bought a tract of land, divided it into lots, and erected a number of dwellings, each on a lot with a frontage on North Homewood Avenue of 40 feet and a depth of 100 feet. After so dividing the larger part of the tract, he had remaining a lot at one end of it with a frontage of 76 feet on North Homewood Avenue, and a depth on one side of 100 feet; the lot not being rectangular, the other two sides were of different lengths. By various transfers, Marie C. Miller took title.

The building restrictions imposed on land in this territory by the Zoning Ordinance prescribe "minimum dimensions of yards and other open spaces and the area of lot required per family housed thereon." "There shall be a side yard on each side of a One-Family dwelling, one of which shall be at least three (3) feet wide and the total width of both Side Yards shall be not less than ten (10) feet." The "Lot Area Per Family" restriction is as follows: "The minimum requirement as to lot area per family housed thereon shall be as follows: One-family dwelling, four thousand (4,000) square feet; . . ." Section 31 of the ordinance provides: "No yard, court or other open space provided about any building for the purpose of complying with the provisions of these regulations shall again be considered as a yard, court, or other open space for another building."

Before the ownership of the 76-foot lot had been divided into the two adjoining lots now involved, one now owned by Brosnan and the other by appellant, an application was made by W. A. Miller, the appellant's husband, for a permit to build a single dwelling on a rec-

tangular lot 40 by 100 feet. The permit was based on Exhibit 9 in the record, and, for convenience, will be so referred to. A 40-foot front for that lot was necessary to furnish the 4,000 square feet required by the restriction. A house was built pursuant to the permit, Exhibit 9; the result then was that Miller had used up all of his entire tract in lots 40 by 100 and had remaining unbuilt upon, the end of the tract, a corner lot, with a frontage on North Homewood Avenue of only 36 feet. The ordinance requirement, that a house must be set back a certain distance, so limited the space available for building that it became a problem how to utilize this corner lot. The following plan was proposed: The house last constructed, pursuant to Exhibit 9, was sold to Anna Brosnan on a lot 36 feet front, thus leaving, out of the former frontage of 76 feet, a corner lot with a front of 40 feet instead of 36 feet as it would have been, if the house, constructed under the permit Exhibit 9, had been sold on a 40-foot lot with the 4,000 square feet required by the ordinance. Mrs. Miller, the appellant, then obtained the permit now in question to build on the corner lot. Examination of the records of the bureau would have shown that the house she proposed to construct would be built upon a part of the 4,000 square feet restricted by the ordinance when the permit for the Brosnan house was obtained on Exhibit 9 by appellant's husband. In other words, the four-foot strip obtained by reducing the frontage of the built-upon-lot from 40 to 36 feet, although already subjected to the building restriction, was proposed to be (and in fact was) considered a second time as constituting part of the required area for the corner lot in disregard of the restriction imposed by the prior conduct of the parties. Both the learned courts below were of opinion that this was a violation of the city ordinance; that land once subjected by the conduct of the parties to the restriction specified in the ordinance could not be relieved from the restriction by the mere device of conveying it to an ad-

joining owner, or of treating it as part of an adjoining lot. This was well stated by the learned hearing judge: "We take it, therefore, that any subsequent purchaser of the four-foot strip took it subject to the restriction before mentioned and that a complete answer to Marie C. Miller's request for leave to construct her proposed dwelling house in part on such strip was the provision of Section 31 of the ordinance and the previous action of her predecessor in title. To hold otherwise would render impotent and utterly useless the salutary provisions of the zoning ordinance which are designed to promote the health and safety of the city's inhabitants by providing for each individual dwelling house an ample lot area and sufficient side yards." We agree that so long as the zoning restrictions remain in effect, the unbuilt upon area, required by the ordinance as necessary for each one-family dwelling, is subject to a prohibitory building restriction.

The order appealed from is affirmed at appellant's costs.