Odell JOHNSON, Jr., et al., Appellants,

v.

BOARD OF ADJUSTMENT, CITY OF WEST DES MOINES, Iowa, Appellee,

McLaren Enterprises, Inc., et al., Intervenors-Appellees.

No. 2–57317.

Supreme Court of Iowa.

March 17, 1976.

874

Dwight W. James, F. Richard Lyford and Richard A. Malm, Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellants.

Jack Rogers, Des Moines, for appellee.

John Connolly, III, Connolly, O'Malley, Lillis & Hansen, Des Moines, for intervenors-appellees.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and REYNOLDSON, JJ.

RAWLINGS, Justice.

Plaintiffs appeal from trial court adjudication upholding issuance of a special use permit to intervenor-defendants by defendant Board of Adjustment, City of West Des Moines (the Board). We affirm.

July 26, 1971, intervenor-defendants (referred to collectively as defendants and individually by proper name) petitioned the Board for a special use permit to construct a mortuary. Defendant McLaren Enterprises, Inc. (McLaren), is the developer and primarily interested party, but, for reasons discussed *infra*, defendants Carl and Lucille Ripper (Rippers) and Resthaven Cemetery Association (Resthaven) joined in McLaren's petition.

Resthaven is the owner of approximately 35.93 acres of land in West Des Moines, 30.40 acres thereof being dedicated to public use as a cemetery, thus tax-exempt. See § 427.1(3), The Code 1971. The other 5.53 acres are taxable, therefore presumably not so dedicated. In addition to burial plots, a mausoleum stands on the southern portion of the Resthaven property.

The Rippers own a 16.37 acre parcel adjacent to Resthaven. By agreement dated June 17, 1971, McLaren holds an option to lease 2.88 acres of Rippers' land for construction of the proposed mortuary. According to plans and specifications submitted by McLaren, the structure will be located immediately west of the existing mausoleum.

Plaintiffs, taxpayers and residents of West Des Moines living in the vicinity of Resthaven, vigorously opposed the project during the Board hearings. Nonetheless, the special use permit issued September 8, 1971. By certiorari proceedings pursuant to Code § 414.15, plaintiffs took their protest to Polk District Court. April 1, 1974, trial court denied the relief sought by plaintiffs, finding the Board acted legally and within its jurisdiction in granting the special use permit.

Other salient facts will be noted as they become relevant to disposition of the issues presented for review.

Plaintiffs mount a comprehensive attack on the Board's issuance of the permit and trial court's judgment sustaining same. First, they contend the Board's findings are supported by neither substantial evidence nor sufficient findings of fact. Second, it is argued the Board violated the municipal zoning ordinance provisions governing (a) minimum lot area for land uses in agriculturally zoned districts, and (b) conditions precedent to issuance of special use permits. Finally, plaintiffs allege issuance of the permit exceeds statutory authority because the ordinance permits arbitrary and capricious "spot zoning". These issues will be considered in the order presented.

I. Our scope of review in cases of this nature has been described as "somewhat unique". Trailer City, Inc. v. Board of Adjustment, 218 N.W.2d 645, 646 (Iowa 1974). No useful purpose will be served by repeating Trailer City's exposition of the principles governing judicial review of board actions in zoning matters. As to appellate review, "[t]he action of the trial court has the effect of a jury verdict and is appealable to us on assigned errors only". Id., 218 N.W.2d at 648.

### SUFFICIENCY OF THE RECORD

II. Plaintiffs raise two claims by their first assignment. One relates to competency of evidence presented to the Board. The other goes to legal sufficiency of findings of fact upon which the Board (and trial court) acted. Neither suffices as a predicate for reversal.

A. With regard to the first contention, supra, plaintiffs point out none of the witnesses who testified at the hearings were placed under oath and none of the offered exhibits were sponsored by persons so sworn. They thereupon construct a three-step supportive argument: (1) Issuance of special use permits is "a quasi-judicial or administrative function * * *." City of Des Moines v. Lohner, 168 N.W.2d 779, 784 (Iowa 1969), and citation. (2) In judicial proceedings, no person is competent to testify absent administration of oath. See generally 98 C.J.S. Witnesses § 320. (3) Therefore, evidence in the case at bar was inconsequential and could not serve as a basis for the Board's decision.

■ Our examination of the record reveals plaintiffs failed to object to the procedure adopted by the Board. In Brenton State Bank v. Heckmann, 233 Iowa 682, 685, 7 N.W.2d 813, 815 (1943), this court observed: "It is generally held this amounts to a waiver of the right to object that the witnesses are not sworn. [Citation]." The foregoing statement is dispositive. See also Wilcoxon v. United States, 231 F.2d 384, 386–387 (10th Cir. 1956), cert. den., 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469 (1956); People in Interest of K.P., 182 Colo. 409, 514 P.2d 1131, 1134 (1973); 6 Wigmore, Evidence, § 1819(b), at 297–298 (3d ed. 1940); 98 C.J.S. Witnesses § 320e; cf. Ferguson v. Stilwill, 224 N.W.2d 11, 13 (Iowa 1974); Gilbert v. Stevens, 284 App.Div. 1016, 135 N.Y.S.2d 357, 359 (1954). Furthermore, plaintiffs themselves presented numerous letters from interested citizens opposing construction of the mortuary, none of which were sworn to or notarized.

Parenthetically noted is Code § 414.9, which provides, in relevant part: "Such chairman [of the board], or in his absence, the acting chairman, may administer oaths and compel the attendance of witnesses." (emphasis supplied). In Iowa Nat. Indus. Loan Co. v. Iowa State, etc., 224 N.W.2d

437, 440 (Iowa 1974), we said: "While 'may' is ordinarily a permissive word, there are many circumstances under which it may be given a mandatory meaning. [Citations]." Plaintiffs would have us adopt the latter view. By virtue of our disposition of this question on waiver grounds, however, their request is not entertained. Cf. *Brenton State Bank v. Heckmann, supra,* 233 Iowa at 685, 7 N.W.2d 813.

B. The second contention raised by the present assignment concerns the Board's alleged duty to make more specific findings of fact and provide a statement of reasons for issuing the permit.

The following resolution was adopted by the Board:

"That the request be granted with the provisions and everything that was promised be fulfilled in regards to the screening, the building, the drainage, care of the trees as included in the supplemental statement in regard to the site plan and in the granting of said request subject to the foregoing conditions found:

"1.  That the traffic density and control is adequate in view of the ingress-egress drives leading to the four-lane public roadway, that evidence although disputed indicates that there will be no decreased value of the buildings, and property adjacent to the area on the lots upon which a funeral home is located.

"2.  That it appears the use of the land is in accordance with the comprehensive planning and is compatible to the surrounding area, that all the statements and evidence presented in evaluating the same at the hearing would indicate that the use intended promotes the health and general welfare of the people in general."

Plaintiffs tell us the generality of these findings is such that it cannot be determined whether the Board and trial court applied all relevant sections of the municipal zoning ordinance in assessing propriety of the permit. It is further contended this case should be reversed and remanded to remedy the situation. We are not so persuaded.

Neither the Board nor trial court were asked to make more specific findings of fact. Although there is substantial uncertainty as to whether certain sections of the zoning ordinance were applicable and if so correctly applied, the fact remains plaintiffs did not act to preserve this matter for review. As aptly stated in *Farmers Insurance Group v. Merryweather,* 214 N.W.2d 184, 190 (Iowa 1974):

"[W]e do not assume, without proof, that a trial court reached findings through application of erroneous rules of law. [Citation]. And, although trial court's findings are unusually brief, we have held one who is dissatisfied with such findings should invoke rule 179(b), Rules of Civil Procedure, which permits a motion asking that they be amended or enlarged. [Citation]. [Plaintiff] did not ask for enlarged findings. No error of law has been demonstrated on this point."

Moreover, this court said in *Henschel v. Hawkeye-Security Insurance Company,* 178 N.W.2d 409, 420 (Iowa 1970): "[I]n a law case tried to the court issues as to which no findings of fact or conclusions of law are made *or requested* will not be considered on review. [Citations]." (emphasis supplied). See also 5A C.J.S. Appeal and Error § 1675.

In short, the asserted inadequacy of the findings below, raised now for the first time, "will not be entertained save and except as incident to a determination of other issues properly presented." *Presbytery of Southeast Iowa v. Harris,* 226 N.W.2d 232, 234 (Iowa 1975). Furthermore, trial court's decision on the facts, although "unusually brief" as in *Merryweather,* has the force and effect of a jury verdict. See *In re Estate of Crozier,* 232 N.W.2d 554, 558 (Iowa 1975); *Trailer City, Inc. v. Board of Adjustment, supra,* 218 N.W.2d at 648. Such factual determination will be broadly and liberally construed and, where ambigui-

ty appears, construed to uphold rather than defeat the judgment reached. See *Hammer v. County of Ida*, 231 N.W.2d 896, 900 (Iowa 1975), and citations.

Additionally *Deardorf v. Board of Adjustment, etc.*, 254 Iowa 380, 385, 118 N.W.2d 78, 81 (1962), says: "Our statute does not require the board to make findings of fact nor a record of the reasons for its action." See also *Board of Adjustment of City of Des Moines v. Ruble*, 193 N.W.2d 497, 503 (Iowa 1972); *Anderson v. Jester*, 206 Iowa 452, 460–461, 221 N.W. 354 (1928). But see *Cedar Rapids Steel Transp. v. Iowa State Com. Com'n*, 160 N.W.2d 825, 837 (Iowa 1968), cert. den., 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969). Plaintiffs acknowledge *Deardorf* might be controlling on this point, but argue it should be overruled. Under the record before us, however, the question is not reached. See generally 101 C.J.S. Zoning § 214, at 976, nn. 32–35, and § 308. And, although the Board was not subject to the Iowa Administrative Procedure Act (see § 17A.2(1), The Code 1975), we judicially notice the requirements imposed by § 17A.16(1).

Plaintiffs' foregoing dual assignment reveals no ground for reversal.

## APPLICABILITY OF MUNICIPAL ZONING ORDINANCE PROVISIONS

III. A second array of assigned errors concerns applicability of several West Des Moines zoning ordinance sections to issuance of the special use permit. Plaintiffs contend all of the provisions discussed herein apply but were violated by the Board. Alternatively, they assert the Board's failure to state more specific findings and reasons for the controverted decision makes it impossible to determine whether relevant ordinance provisions were applied at all. While there may be merit in the latter contention, our holding, *supra*, precludes reversal on that basis.

By contrast, defendants maintain none of the disputed ordinance clauses are applicable. In the alternative, they contend findings adverse to plaintiffs as to each such provision inhere in the Board's decision to grant the permit.

While neither theory is wholly satisfactory, we are not persuaded plaintiffs have successfully borne their "heavy burden of showing [the Board] exceeded its proper jurisdiction or otherwise acted illegally". *Trailer City, Inc. v. Board of Adjustment, supra*, 218 N.W.2d at 646.

The relevant ordinance provisions are of two kinds. First entertained are those concerning permissible *uses* of land as determined by the zoning district regulations governing the subject property. We shall then consider certain provisions limiting the Board's *authority* to issue special use permits.

## USE DISTRICT RESTRICTIONS

IV. West Des Moines enacted a comprehensive municipal zoning ordinance pursuant to Code chapter 414. The *text* thereof establishes fifteen district classifications, including, for example, six residential districts designated R–1, R–1–A, EU–1, R–2, R–3, and R–4. The fourteenth district listed in the ordinance is an "Agricultural District", designated as "A" in the text. Moreover, the text does not subclassify agricultural districts as A–1, A–2, etc.; the *only* agricultural district classification is "A".

In contrast to the ordinance text, however, the zoning *map* shows the proposed mortuary site is located in an "A–1" district. The map is made a part of the ordinance by reference. But, as above noted, there is no "A–1" district in the text.

The parties have stipulated that in drafting the ordinance more than one agricultural district was contemplated. When enacted, however, the map was inadvertently left uncorrected. Notwithstanding this stipulation, defendants assert the effect of the foregoing discrepancy is to leave the entire tract (Resthaven's 35.93 acres and Rippers' 16.37 acres) unzoned. They thereupon take the position Article XX of the ordinance,

regulating "A" agricultural districts, is inapplicable. We disagree.

Municipal zoning regulations "shall be made in accordance with a comprehensive plan", to encourage "the most appropriate use of land throughout such city". Code § 414.3. See also *Brackett v. City of Des Moines*, 246 Iowa 249, 256–257, 67 N.W.2d 542 (1954); *Plaza Recreational Center v. Sioux City*, 253 Iowa 246, 257–258, 111 N.W.2d 758 (1961). Judged by the statutory standard of *comprehensive* zoning *throughout* the city, it cannot be logically maintained the subject property was meant to be an "unzoned island". The discrepancy resulted from a draftsman's oversight. It will be treated accordingly.

■ In the abstract, we agree with defendants' admonition that generally correction should be made by legislative enactment, not by judicial interpretation. But there is a distinction between judicial interpretation and judicial paralysis. As stated in *Jones v. Iowa State Highway Commission*, 207 N.W.2d 1, 3 (Iowa 1973):

> "We reiterate that authority to make changes in legislative enactments should be exercised with 'extreme caution and great reluctance,' but it does not follow we must remain idle and helpless while permitting inadvertent clerical errors or omissions to frustrate obvious legislative intent."

The proposed mortuary site is subject to Article XX of the zoning ordinance, governing uses in "A" agricultural districts.

V. The next question before us is the *extent* to which Article XX applies. Resolution of this problem requires reference to several interrelated sections of the ordinance.

Article XXI is entitled "unclassified and Special Uses". Section 1 thereof states: "The regulations set forth in this Article or elsewhere in this Ordinance which are applicable shall apply to the Unclassified and Special Uses listed in this Article."

By virtue of Art. XXI, § 4(L), a mortuary is designated a special use. The same article provides, in § 5(A)(1): "A special use permit shall not authorize a use which does not comply with the *minimum requirements of the district in which it is located.*" (emphasis supplied).

Plaintiffs protest the instant permit violates § 5(A)(1) because it authorizes a special use which does not comply with the "minimum requirements" of an "A" agricultural district. More specifically, we are referred to Article XX, captioned " 'A' Agricultural District". Section 4 thereof includes this table of "minimum requirements" which "shall be observed" in agricultural districts:

| Principal Use | Lot area | Lot Width | Front Yard Depths | Side yard Least width On any one Side | Width minimum Sum of Both side Yards | Rear Yard Depths |
| --- | --- | --- | --- | --- | --- | --- |
| All uses | 20 acres | 200 ft. | 50 ft. | 50 ft. | 100 ft. | 50 ft. |

Because "all uses" must satisfy the 20-acre "minimum requirement" in an agricultural district, plaintiffs insist *each* use must meet this area requirement. Since McLaren has an option to lease only 2.88 acres of the 16.37 acre Ripper tract, it is urged the proposed mortuary site fails to comply with the acreage minimum imposed by Art. XX, § 4. We are thus called upon to determine whether the words "all uses" demand 20 or more acres devoted exclusively to *each* use.

*Consolidated Freightways Corp. v. Nicholas*, 258 Iowa 115, 121, 137 N.W.2d 900, 904 (1965), seemingly lends some support to plaintiffs' argument. Interpreting statutory use of the word "all" we there observed: "The word 'all' is commonly understood and usually does not admit of an exception, addition, or exclusion." See also *Cedar Rapids Com. Sch. Dist. v. City*, 252 Iowa 205, 211, 106 N.W.2d 655 (1960). Even more favorable to plaintiffs are cases which

say "all" includes "each" and "every". See e. g., *Knox Jewelry Co., Inc. v. Cincinnati Insurance Co.*, 130 Ga.App. 519, 203 S.E.2d 739, 740–741 (1974) and *Baker v. Brown's Estate*, 365 Mo. 1159, 294 S.W.2d 22, 25 (1956).

Standing alone, these interpretations of "all" would suggest *each use* of agriculturally zoned land must contain at least 20 acres devoted to such use. But defendants advance three persuasive arguments to the contrary.

First, Art. XX, § 4, *supra*, specifies both a minimum area of 20 acres and minimum lot width of 200 feet. Thus, if a rectangular lot is only 200 feet wide (as the ordinance permits), the 20-acre minimum could not be satisfied unless the lot were 4356 feet long, *more than eight-tenths of a mile*. Plaintiffs attempt to downplay this interpretation of § 4 by hypothesizing a trapezoidal lot of less extreme dimensions. While their ingenuity is estimable, the shape and dimensions of their hypothetical tract can only be described as uncommon. We do not, however, rest our decision on this premise alone.

Second, Art. XX, § 4 literally applies only to *principal uses* of agriculturally zoned land. Art. XX, § 2(A)(1)–(10) specifically lists "principal uses" for "A" agricultural districts, and mortuaries are not included. Rather, they are classified as *special uses* in Art. XXI, § 4(L). Defendants thus argue "all uses" refers only to all *principal*, not *special* uses. Hence, mortuaries are not subject to the 20-acre minimum lot area requirement of Art. XX, § 4. Tending to support this view is *Pearson v. Shoemaker*, 233 N.Y.S.2d 674, 676 (S.Ct.1960).

Finally, defendants' most persuasive contention stems from an internal ambiguity in Article XX. Section 2 thereof says, in relevant part:

"A building or premises [in an "A" agricultural district] shall be used only for the following purposes:

" * * * *

"2. Truck gardening and nurseries, provided that no permanent dwelling units shall be erected thereon *unless the tract contains twenty (20) or more acres.*" (emphasis supplied).

Art. XX, § 4, previously noted, apparently requires a minimum lot area of twenty acres for any use of agriculturally zoned property, including truck gardening and nurseries. If so, however, the italicized words in § 2, quoted above, are superfluous. In other words, if, as plaintiffs insist, any use in an "A" district must contain at least 20 acres, a truck garden or nursery must likewise contain 20 acres, *whether "permanent dwelling units shall be erected thereon"* or not. But the clear inference to be drawn from the proviso of § 2 is that truck gardening and nursery lots, having no permanent dwellings, need *not* satisfy the 20-acre minimum.

We are satisfied the foregoing arguments collectively betray a facial ambiguity as to the extent of applicability of the ordinance.

VI. The next step of our inquiry focuses upon the effect of such ambiguity.

In *Jersild v. Sarcone*, 260 Iowa 288, 296, 149 N.W.2d 179, 185 (1967), we said: "[T]he rule of strict construction of restrictions on the free use of property is applicable where the wording of the restriction is ambiguous. [Citations]." Furthermore, the restrictions of a zoning ordinance should not be extended by implication or interpretation. See *Chicago, R. I. & P. R. Co. v. Liddle*, 253 Iowa 402, 411, 112 N.W.2d 852 (1962), and citations. See also 2 Anderson, American Law of Zoning, §§ 12.02–12.03 (1968 ed.).

Applying these rules to the case at hand, we hold Art. XX, § 4 of the ordinance is inapplicable to the extent it would require developers of the proposed mortuary (a special use as defined by Art. XXI, § 4(L)) to comply with the 20-acre minimum lot area provision. Any other view would contravene the rule thus stated in *Livingston v. Davis*, 243 Iowa 21, 26, 50 N.W.2d 592, 596 (1951): "A zoning ordinance should

not be extended by implication to prevent a use not *clearly* prohibited. [Citations]." (emphasis supplied). While the 20-acre restriction *arguably* prohibits the special use here involved, it does not *clearly* do so.

VII. Alternatively, even if the 20-acre minimum were applicable, plaintiffs have still failed to discharge their burden of demonstrating the special use permit was illegally granted.

As explained earlier, defendants jointly petitioned for the permit. McLaren, holding a lease option on 2.88 acres of Rippers' 16.37 acre tract, apparently suspected the 20-acre minimum lot restriction might apply. Resthaven accordingly contributed its property to the effort. Collectively, defendants thereby surpassed the 20-acre minimum. Plaintiffs vehemently object to this "tacking" stratagem and insist the required 20 acres must be in single ownership. For a general discussion of permissible "tacking" as applied to adjacent lots held in single or common ownership see *Newport Associates, Inc. v. Solow*, 36 A.D.2d 519, 317 N.Y.S.2d 715, rev. 30 N.Y.2d 263, 267, 332 N.Y.S.2d 617, 620, 283 N.E.2d 600, 602 (1972), cert. den., 410 U.S. 931, 93 S.Ct. 1372, 35 L.Ed.2d 593 (1973), reh. den., 411 U.S. 977, 93 S.Ct. 2140, 36 L.Ed.2d 699 (1973); *Gaudet v. Building Inspector of Dracut*, 358 Mass. 807, 265 N.E.2d 375 (1970); *Markey v. Zoning Board of Adjustment,* 409 Pa. 430, 187 A.2d 175, 176–177 (1963); 101 C.J.S. Zoning § 144; 1 Rathkopf, Law of Zoning and Planning, ch. 34, § 2, at 34–11 (3d ed. 1956).

The authorities above cited recognize "tacking" as a legitimate means of compliance with lot area zoning regulations. Even so, plaintiffs complain, "The petitioners joining the mortuary developers have merely lent their names to the special use. They have not devoted their lands. Therefore, their lands may not be 'tacked'." If this argument condemns defendants' *motive* for jointly seeking the permit, it stands on an irrelevant premise. As stated in *Shorehaven in Manhasset v. Village of Great Neck Estates*, 22 N.Y.S.2d 944, 946 (S.Ct. 1940): "The petitioner's motive in assem-

bling the plottage is of no importance. Important only is the fact that it has complied with the minimum area requirements."

Moreover, the ordinance defines a lot as:

" * * * a parcel of real property of at least sufficient size to meet the minimum zoning requirements for use, coverage and area * * *. Such lot * * may consist of * * *:

"1. *A combination of complete lots of record, of complete lots of record and portions of lots of record, or of portions of lots of record.*" (emphasis supplied).

Thus the ordinance itself contemplates "tacking", where necessary, to meet the "minimum zoning requirements for use, coverage and area". This is, in fact, the prevailing view. See generally 2 Anderson, *supra*, § 12.11, at 518; 1 Rathkopf, *supra*.

On the other hand, the narrow question posed by plaintiffs is whether adjacent tracts in separate and uncommon ownership may be "tacked". This issue is resolved to our satisfaction in *Chicago Title & Trust Co. v. Village of Wilmette*, 66 Ill.App.2d 326, 214 N.E.2d 336, 341 (1966):

"[T]hroughout this litigation plaintiffs have regarded the subject parcels as a single tract for the purpose of common development since they did not consider parcels 1 and 2 by themselves to be of sufficient size for use as a service station. * * * Therefore, since the proposed use encompasses all three [separately owned] parcels, the parcels were properly considered as one tract."

See also *Menzel v. Tubbs*, 51 Minn. 364, 53 N.W. 653, 654 (1892); cf. *Wellman v. Haug*, 146 Colo. 186, 360 P.2d 972, 974–975 (1961); *Lindsay v. Board of Appeals of Milton*, 362 Mass. 126, 284 N.E.2d 595, 597 (1972).

In light of this holding, coupled with the fact the ordinance does not prohibit "tacking" of separately owned tracts, plaintiffs' instant contention is without merit.

VIII. Plaintiffs voice yet another argument against the "tacking" procedure. Es-

sentially they object to potential "overlapping" of substandard lots, individually too small to satisfy minimum area provisions but more than adequate when "tacked" together. They seek to fortify their position with this example:

"[T]ake the case of two adjacent lots each of insufficient size to meet a minimum area requirement. The owners could collaborate first by joining together for a special permit for the one and then obtain a special permit by joining together for the other. Thus, the minimum area requirement is emasculated if not eliminated."

That argument is untenable for two reasons.

■ First, courts have not been insensitive to this problem in the relatively few instances where it has surfaced. *Compare Appeal of Brosnan*, 330 Pa. 161, 198 A. 629, 631–632 (1938), aff'g 129 Pa.Super. 411, 195 A. 469 (1937), *with McGlasson Builders, Inc. v. Tompkins*, 203 N.Y.S.2d 633 (S.Ct.1960). Furthermore, the West Des Moines ordinance defines "lot" in such a way as to avoid the emasculation of the minimum area requirement feared by plaintiffs. Their "overlap" objection is aptly resolved in 1 Rathkopf, *supra*, 1973 cumulative supplement, at 34–11:

"Land required to be used to calculate the required minimum area of one lot cannot also be used to calculate the minimum area of an adjacent lot. Most zoning ordinances make this clear by the definition of a 'lot' as a parcel of land of sufficient size for a structure and all required yards. To the extent, therefore, that the land is required for a yard, the same land cannot be used for another required yard."

Second, the premise underlying plaintiffs' objection to potential "overlapping" is not supported by the record. The McLaren-Ripper tract comprises 16.37 acres, only 3.63 acres short of the 20-acre minimum which we assume, for purpose of discussion, is applicable. Resthaven owns 35.93 acres, 5.53 of which are taxable and, in the absence of evidence to the contrary, available for private use. Thus, assuming the 5.53 acres of non-dedicated Resthaven property adjoin the 16.37 acre McLaren-Ripper tract (an assumption resolved *infra*), defendants collectively possess 21.90 acres, more than enough to comply with the minimum area requirement. Hence, no "overlap" is involved.

IX. Pursuing the matter further, plaintiffs insist there is no evidence in the record showing *where* Resthaven's 5.53 taxable, presumptively non-dedicated acres, are located. We are told it cannot be assumed they adjoin Rippers' 16.37 acre tract. Hence, plaintiffs say the record does not support a finding that the 20-acre minimum is satisfied.

■ Admittedly, the record does not indicate the precise location of Resthaven's non-dedicated property. While it is clear 30.40 Resthaven acres are dedicated to public use as a cemetery, plaintiffs argue it cannot be positively stated the remaining 5.53 acres adjoin the McLaren-Ripper acreage. But acceptance of plaintiffs' conclusion that a reversal is therefore necessary would effectively reward their unexplained failure to request a clarification by the Board of its findings in this respect. We refuse to indulge plaintiffs' uncertain assumption in preference to another when the result defeats the judgment reached. See *Hammer v. County of Ida, supra*.

X. Finally, on this subject, plaintiffs maintain the Board violated its duty to find the 20-acre minimum requirement was in fact satisfied. In course of the September 8, 1971 hearing, counsel for plaintiffs stated:

"I still don't understand what amount of land would be leased by McLaren for the purpose of this funeral home and I can say for certain that it couldn't be twenty acres because this land has been dedicated for cemetery purposes. * * * That land has been deeded and restricted by

covenants for the purposes of cemeteries and cemeteries alone."

While the Board made no specific finding in this regard, some members opined the "tacking" issue would ultimately have to be resolved in the courts, but, because defendants collectively held approximately 52 acres, the Board should proceed on the assumption the minimum area requirement was satisfied.

■ Minutes of the Board hearing reveal plaintiffs offered no evidence to support counsel's argument that the *entire* Resthaven tract has been dedicated to public use. Unquestionably 30.40 acres are tax-exempt; thus, an inference that the remaining 5.53 acres are (1) taxable and (2) not dedicated to public use, is fully warranted. Cf. *Mulroy v. Churchman*, 52 Iowa 238, 240, 3 N.W. 72 (1879); Id., 60 Iowa 717, 719, 15 N.W. 583 (1883); *State v. Ritschel*, 220 Minn. 578, 20 N.W.2d 673, 675 (1945). Although the Board was not justified in assuming the *entire* Resthaven tract was available for a special use, a less extreme assumption, i. e., 5.53 acres were available, *is* justified by evidence presented to the Board, absent evidence to the contrary. Added to Rippers' 16.37 acres, defendants' joint petition for the permit embraced a total of 21.90 usable acres.

There is abstract merit in plaintiffs' contention to the effect publicly dedicated land may not be "tacked" to private property so as to achieve artificial or "manufactured" compliance with minimum lot area regulations. Several cases touching on this subject are collected in *Metzenbaum v. City of Carmel-by-the-Sea*, 234 Cal.App.2d 62, 44 Cal.Rptr. 75 (1965). See also 101 C.J.S. Zoning § 144; cf. *Jersild v. Sarcone, supra*, 260 Iowa at 297–299, 149 N.W.2d 179. But the problem envisioned by plaintiffs had not materialized here because more than enough *non-dedicated* land (21.90 acres) is deemed available for the proposed special use.

Similarly, there is theoretical soundness in plaintiffs' objection to the Board's "as-sumption" the minimum area requirement was met. Again, however, their objection is not borne out by the facts. As aforesaid, defendants presented *evidence* to the Board from which it could find more than 20 acres of land were available, if necessary, to satisfy the minimum lot area requirement. Only on the strength of this showing did the Board see fit to "assume basically that they are a bona fide applicant" and "to assume now that they had the proper twenty acres in a way that would make them a proper applicant". While choice of the word "assume" was unfortunate, we think plaintiffs' objection is merely one of semantics. The evidence presented supports a *finding* of compliance with the 20-acre minimum provision, and such was obviously the basis of the Board's "assumption" of compliance.

■ Consequently, we cannot agree the Board abdicated its duty to find facts necessary for issuance of the permit. Had defendants presented no evidence as to the size of their lot, it would of course be improper for the Board to "assume now that they had the proper twenty acres". Such, however, is not the case here. The distinction is inversely illustrated in *Kenan v. Board of Adjustment of Town of Chapel Hill*, 13 N.C.App. 688, 187 S.E.2d 496, 499–500 (1972), cert. den., 281 N.C. 314, 188 S.E.2d 897 (1972):

"The ordinance requires that certain conditions be met before a special use permit can be granted. The petitioner has the burden of satisfying the Board that it meets these conditions. [Citation]. The Board in this case has not found as a fact that petitioner fails to meet the conditions set forth in the ordinance. It has merely found that petitioner has failed to produce sufficient evidence for the Board to make the required findings. *There are no presumptions in favor of the petitioner and the petitioner merely failed in proof.*

"Petitioner had the burden of introducing evidence that the conditions required by the ordinance had been met. He

failed to introduce such evidence." (emphasis supplied).

In the case at bar, there was no presumption in favor of defendants, but, unlike *Kenan*, there was no failure of proof. Because defendants produced sufficient evidence for the Board to make the required findings, it cannot be said the Board impermissibly indulged a presumption of compliance with the minimum lot area requirement.

XI. As the foregoing intimates, the instant question actually turns on the broader burden of proof issue. At the outset, it is well settled issuance of special use permits is a "quasi-judicial or administrative function". See *City of Des Moines v. Lohner, supra*, 168 N.W.2d at 784. And, "in administrative proceedings, as well as in court proceedings, the burden of proof, apart from statute, is on the party asserting the affirmative of an issue". *Wonder Life Company v. Liddy*, 207 N.W.2d 27, 31 (Iowa 1973). See also Iowa R.Civ.P. 344(f)(5). Although special use permits and variances are distinguishable, see *Buchholz v. Board of Adjustment of Bremer County*, 199 N.W.2d 73, 75 (Iowa 1972), the burden of proof is generally placed upon an applicant in either case. See generally 101 C.J.S. Zoning § 306, cited in *Deardorf v. Board of Adjustment, etc., supra*, 254 Iowa at 385, 118 N.W.2d 78; *Board of Adjustment of City of Des Moines v. Ruble*, 193 N.W.2d 497, 502 (Iowa 1972).

It is thus apparent defendants had the burden of proof in the Board proceedings. It is equally evident they successfully made at least a prima facie showing of compliance with the minimum area provision of the ordinance. While such showing does not shift the burden of proof, we are satisfied the burden of *going forward* with rebuttal evidence devolved upon plaintiffs. The latter burden was not discharged. In this regard 2 Am.Jur.2d, Administrative Law, § 391, at 197–198 says:

"As in court proceedings, the burden of proof, apart from statute, is on the party asserting the affirmative of an issue before an administrative tribunal. This is usually the claimant, complainant, or applicant, but the party resisting a claim may have the burden of proving a bar to such claim, such as a statutory exception, and, *while the burden of proof never shifts, the burden of proceeding with the presentation of evidence does shift.*

"* * * some statutes provide that one presenting a claim under their terms shall be presumed to be within the provisions of the act. * * * Where facts are shown which give rise to a presumption, the ordinary function of the presumption is to constitute prima facie proof as to the issue involved *and to shift to the other party the burden of going forward with the evidence as to that issue.*" (emphasis supplied).

Although the ordinance in question does not mention such a presumption, the distinction between static burden of proof and shifting burden of going forward with presentation of evidence is sound, and finds case support in this jurisdiction. *Howard & Harper v. Chicago, B. & Q. R. Co.*, 196 Iowa 1378, 1383–1384, 195 N.W. 153, 155 (1923) says:

"While it is true that the 'burden of proof' rests upon him who asserts it, it is also true that, when the party having such burden has made his prima facie case the 'burden,' or 'duty,' rests upon the opposite party to go forward with his proof to meet the prima facie case so made."

See also *Hoover v. First Am. F. Ins. Co.*, 218 Iowa 559, 570–571, 255 N.W. 705 (1934). See generally McCormick, Evidence, § 355 (2d ed. 1972).

Plaintiffs' multiple assignments based on the minimum lot area requirement, Art. XX, § 4 of the ordinance, are without merit.

## RESTRICTIONS ON AUTHORITY TO GRANT A SPECIAL USE PERMIT

XII. Article XXI of the ordinance governs issuance of permits for "unclassified"

and "special" uses. Section 6(A) thereof provides, in relevant part:

"Authorization for a *special use permit* shall not be granted for failure to comply with the following conditions:

"1. Buildings involving the large assemblages of people shall not be located less than three hundred (300) feet from any existing dwelling site.

"2. Uses involving nuisances such as noise, vibration, pollution, etc. shall not be located less than five hundred (500) feet from an 'R' or 'EU' District or less than one thousand (1,000) feet from an existing dwelling." (emphasis supplied).

Plaintiffs acknowledge the somewhat cumbersome language in which § 6(A) is cast, but seek a reversal on the grounds either the "large assemblages of people" or "nuisance" prohibition, or both, will be violated by placement of the proposed mortuary. If they are correct, the Board had no authority to issue the permit.

As a preface to our resolution of this issue, additional facts must be disclosed. Counsel for the Board, Mr. Rogers, tendered a written opinion for that tribunal's consideration in which he concluded § 6(A) was not meant to apply to special uses, but only to *unclassified uses*. Defendants here adopt the same view. In effect, we are told the specific reference to *special uses* is the result of a clerical or drafting error.

Although defendants' adoptive construction of § 6(A) is more than minimally cogent, we need not resolve the instant issue on that basis. Nor is it necessary to set forth other sections of the ordinance which lend support to their position. For present purposes, we share defendants' doubts that Article XXI was intended to impose stringent controls on special uses such as churches, parks, country clubs, museums, schools and mortuaries, while no similar restrictions apply to unclassified uses such as amusement parks, quarries, mining operations, garbage dumps, sewage plants and

shooting ranges. But, mindful of the "extreme caution and great reluctance" which circumscribe judicial authority to make changes in legislative enactments, we need not invoke "our rule of statutory construction which requires us, if possible, to avoid conclusions which lead to absurd results". *State v. Kramer*, 231 N.W.2d 874, 878 (Iowa 1975), and citation. Rather, it is assumed *arguendo* § 6(A) is applicable, as it facially purports to be, in special use permit proceedings.

XIII. Prefatorily, the very existence of Mr. Rogers' legal opinion *may* have obviated findings of fact on the "large assemblages of people" and "nuisance" prohibitions of § 6(A). Plaintiffs contend this possibility, coupled with the absence of specific written findings on these matters, warrant reversal. Insofar as this contention renews their attack on the Board's failure to state its findings and reasons in greater detail, plaintiffs will not be heard to complain of this largely self-inflicted wound, for reasons set forth above. Equally unacceptable is their facile assumption that failure to *state* its findings as to these "ultimate facts" means the Board did not *make* such findings.

Thus limited, the question now presented is whether the Board applied or disregarded a pertinent provision of the ordinance in discharging its administrative duty. If the latter, the Board impermissibly "amend[ed] or set aside the zoning ordinance under the guise of" a special use permit. See *Deardorf v. Board of Adjustment, etc., supra*, 254 Iowa at 389, 118 N.W.2d 78 at 83. Simply stated, a board of adjustment cannot disregard the provisions of, nor exceed the powers conferred by, a zoning ordinance. See *Zimmerman v. O'Meara*, 215 Iowa 1140, 1146–1147, 245 N.W. 715 (1932).

We are satisfied, however, the *possibility* of illegality urged by plaintiffs is outweighed by two factors: (1) existence of evidence before the Board as to (a) seating capacity of the mortuary (the "large assem-

blages of people" provision) and (b) its impact on surrounding areas (the "nuisance" clause); and (2) a presumption of administrative regularity.

A well settled tenet of administrative law establishes a "presumption of regularity of administrative action". 2 Davis, Administrative Law Treatise, § 11.06, at 63 (1958 ed.). A frequently cited statement of the rule appears in *United States v. Chemical Foundation*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926): "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."

We have invoked this presumption of administrative regularity in numerous cases. See e. g., *Janson v. Fulton*, 162 N.W.2d 438, 442 (Iowa 1968); *Cedar Rapids Steel Transp. v. Iowa State Com. Com'n*, supra, 160 N.W.2d at 836. Where, as here, it is argued the administrative body acted in disregard of applicable laws or regulations, the presumption of regularity applies until clearly rebutted. As observed in *Board of Education v. State Bd. Pub. Instn.*, 261 Iowa 1203, 1210, 157 N.W.2d 919, 923 (1968):

"[A]ll inferences in favor of the legality of official steps will be observed, and only where it clearly appears there was a failure to substantially comply with the statutory requirements will there be found jurisdiction violations."

Moreover, this court declared in *Anderson v. Jester, supra*, 206 Iowa at 461, 221 N.W. at 358: "The proceedings of the board [of adjustment] are presumed to be regular. [Citations]. The board is presumed to have found the existence of such facts as were necessary to sustain its action. [Citations]."

Any speculative possibility the Board incorrectly deemed § 6(A) inapplicable does not, under the circumstances, rebut the strong contrary presumption. Had defendants presented no *evidence* in this regard, our holding would be otherwise. See *Dear-*

*dorf v. Board of Adjustment, etc., supra*, 254 Iowa at 385, 118 N.W.2d 78. But probative evidence as to the "large assemblages of people" and "nuisance" factors was presented. The existence of such evidence, in turn, permits a presumption the Board found therefrom the facts necessary to sustain its action. See *Anderson v. Jester, supra*; *Zimmerman v. O'Meara, supra*, 215 Iowa at 1148, 245 N.W. 715.

We are fully aware of Professor Davis' criticism of "[o]ccasional holdings elsewhere * * * to the same effect":

"The obvious disadvantage of assuming that a general finding includes all specific findings necessary to support it is that the assumption may often be contrary to the fact; the various practical reasons for requiring findings are subverted by the assumption." 2 Davis, *supra*, § 16.07, at 456.

Nevertheless, a contrary holding is precluded by plaintiffs' failure to raise the findings issue below. Had they done so, much uncertainty would have been avoided. But on the record presented, it cannot be said plaintiffs' version of the Board's decisional process is accurate. Nor do we conclude, on the strength of conjecture alone, the Board neglected its duty to conscientiously apply § 6(A).

XIV. Proceeding on the presumption facts were found adverse to plaintiffs on the "large assemblages of people" and "nuisance" provisions of § 6(A), the inquiry is reduced to familiar proportions. On certiorari, the Board's findings, express and implied, were binding on trial court so long as supported by substantial evidence resulting from application of correct legal standards. See *Bennett v. Guthridge*, 225 N.W.2d 137, 139 (Iowa 1975). In the same vein, if trial court's finding of adequate facts to warrant issuance of a special use permit is supported by substantial evidence, we are bound by such holding. See *Vogelaar v. Polk County Zoning Bd. of Adjustment*, 188 N.W.2d 860, 863 (Iowa 1971); Iowa R.Civ.P. 344(f)(1).

Mindful of these guidelines, we separately consider the two restrictions imposed by § 6(A).

XV. As heretofore noted, § 6(A)(1) proscribes special uses "involving the large assemblages of people" within 300 feet of an "existing dwelling site". At least one such site is 208 feet from the planned mortuary. Thus, if the building will "involv[e] the large assemblages of people", § 6(A)(1) is violated.

A. Plaintiffs contend the mortuary, with an undisputed seating capacity of 200 persons, involves "large assemblages" as a matter of law.

In *Jersild v. Sarcone, supra*, 260 Iowa at 294, 149 N.W.2d at 184, we said: "The construction of the ordinance before us, under the undisputed facts, is a question of law." But *Jersild* does not address the narrower question now before us.

Plaintiffs' brief admits, "The question of what constitutes a large assemblage of people might in some instances be a matter upon which reasonable minds might differ." We are satisfied this is one such instance.

Whether 200 people constitute a "large assemblage" is best described as a question of fact, for reasonable minds might draw different inferences therefrom. Plaintiffs overlook this distinction between undisputed evidentiary *facts* and the reasonable, but disputed, *inferences* arising therefrom. Iowa R.Civ.P. 344(f)(17) deems the distinction "so well established that authorities need not be cited" to support it.

▪ The words "as a matter of law" signify "no other factual finding could be reasonably drawn from the evidentiary facts". *Kress Packing Company, Inc. v. Kottwitz*, 61 Wis.2d 175, 212 N.W.2d 97, 99 (1973). See also *Village of Prentice v. Industrial Comm.*, 38 Wis.2d 219, 156 N.W.2d 482, 483 (1968). We are not persuaded a seating capacity of 200 compels a conclusion the mortuary will "involv[e] the large assemblages of people" as a matter of law. That the evidence might well support an opposite finding by the zoning authorities is

of no consequence. See *Bennett v. Guthridge, supra*, 225 N.W.2d at 139.

Ignoring the inferences which may here be drawn from the undisputed evidentiary facts is demonstrably fatal to plaintiffs' instant contention. A triad of cases illustrates the folly of uncritically deciding the question presented "as a matter of law". In syllogistic format:

(1) If a building is "public" or "semi-public", then the number of persons having access thereto is "large". See *La Freda v. Woodward*, 125 N.J.L. 489, 15 A.2d 798, 801 (1940).

(2) But "[a] funeral home is not a public nor a semipublic building within the meaning of [a zoning ordinance]." *Provo City v. Claudin*, 91 Utah 60, 63 P.2d 570, 573 (1936). *Accord, Fox v. Shriver-Allison Co.*, 28 Ohio App.2d 175, 275 N.E.2d 637, 639 (1971); 58 Am.Jur., Zoning, § 116, n. 10; 101 C.J.S. Zoning § 174, n. 73.

(3) *Therefore*, a funeral home is not accessible to "large" numbers of people.

Since the instant question is one of fact, not law, the foregoing syllogism is useful only to show the subtle dangers of resolving an essentially *factual* question on conclusory "legal" precepts, without reference to the undisputed evidentiary fact, i. e., 200 people.

Plaintiffs' argument the mortuary will involve "large assemblages of people" as a matter of law cannot be accepted under the circumstances here presented.

▪ B. Because trial court's determination of the matter was one of fact, it is entitled to the weight and status of a jury verdict. See *Trailer City, Inc. v. Board of Adjustment, supra*, 218 N.W.2d at 648. The trial judge could not "substitute his judgment for that of the board of adjustment in the absence of arbitrary, unreasonable or capricious action by the board * * *." *Zilm v. Zoning Board of Adjustment*, 260 Iowa 787, 794, 150 N.W.2d 606, 611 (1967). Nor may we substitute ours for that of the trial judge if his determination rests on

substantial evidence. See *Vogelaar v. Polk County Zoning Bd. of Adjustment, supra.*

The record reveals nothing from which trial court could hold the Board acted arbitrarily, capriciously or unreasonably in finding compliance with § 6(A)(1). Certainly the Board did not act in disregard of other ordinance provisions in making its factual determination. The only legislative guideline is Art. XXI, § 2(C), setting forth examples of "[e]stablishments or enterprises involving large assemblages of people or automobiles". The list includes amusement parks, circuses, race tracks, convention halls and auditoriums. Although § 2(C) is not directly involved here, we accord recognition thereto because it discloses an underlying purpose common to § 6(A)(1). See *Presbytery of Southeast Iowa v. Harris, supra,* 226 N.W.2d at 235, and citations. As stated in *City of Burlington v. Turner,* 336 F.Supp. 594, 603 (S.D.Iowa 1972), mod. on other grounds, 471 F.2d 120 (8th Cir. 1973): "[I]dentical statutory language in different statutes should be given much the same meaning * * *." Zoning ordinances are subject to the same rules of construction. See *Kordick Plumbing and Heating Company v. Sarcone,* 190 N.W.2d 115, 117 (Iowa 1971).

In brief, the ordinance defines "large assemblages of people" by example, not by number. Although the examples are helpful, they do not foreclose exercise of the Board's judgment. Cf. *Lower Merion Township v. Enokay, Inc.,* 427 Pa. 128, 233 A.2d 883, 886 (1967). At the very least, the ordinance leaves the matter doubtful, and we resolve such doubts "in favor of the unrestricted use of property". *Maher v. Park Homes, Inc.,* 258 Iowa 1291, 1296, 142 N.W.2d 430, 434 (1966).

Trial court's determination § 6(A)(1) is not contravened stands affirmed.

XVI. Turning now to § 6(A)(2), prohibiting "[u]ses involving nuisances such as noise, vibration, pollution, etc." within 500 feet of a residential district or 1000 feet of an existing dwelling, plaintiffs contend the mortuary is a nuisance due to its proximity to their homes. We find no merit in this argument.

First, plaintiffs overlook the fact Art. XXI, § 4(L) of the ordinance classifies mortuaries as special uses. As such, a mortuary may be located in *any* zoning district, subject to conditions not relevant here. In this regard, 2 Anderson, *supra,* § 11.19, at 281–282, aptly notes:

> "Where a funeral home is a permitted use, it cannot constitute a nuisance per se, and if it is operated in a proper manner it cannot be enjoined as a nuisance." (Citing *Kirk v. Mabis,* 215 Iowa 769, 246 N.W. 759 (1933)).

*Accord, Bauman v. Piser Undertakers Company,* 34 Ill.App.2d 145, 180 N.E.2d 705, 708 (1962); *Mutual Service Funeral Homes v. Fehler,* 257 Ala. 354, 58 So.2d 770, 775 (1952). See generally 8 McQuillin, Municipal Corporations, § 25.131i, at 420–423, and § 25.178a, at 612–613 (rev. 3d ed. 1965); Annot., 39 A.L.R.2d 1000 (1955).

The foregoing authorities clearly establish a mortuary is not a nuisance as a matter of law. Plaintiffs concede mortuaries are "a necessary function", which must be located somewhere. But contrary to plaintiffs' interpretation, this court's holdings in *Kirk v. Mabis, supra,* and *Bevington v. Otte,* 223 Iowa 509, 273 N.W. 98 (1937), do not say "commercial zones" are *the* proper place for mortuaries. Nor did *Bevington* hold a mortuary located in a purely residential neighborhood is a nuisance per se. In fact, this court expressly rejected the latter view in *Dawson v. Laufersweiler,* 241 Iowa 850, 857–858, 43 N.W.2d 726 (1950); cf. *City of LeMars v. Fisch,* 251 Iowa 149, 153–154, 100 N.W.2d 14 (1959).

Plaintiffs also overlook the plain fact that the proposed mortuary will *not* be located in a "purely residential neighborhood", nor even in a residential district. The mortuary site is zoned for agricultural uses and adjoins a mausoleum located within a cemetery. These factors diminish the credibility of plaintiffs' claim that: "The

residents of a once beautiful and serene district of single-family homes will be unable to escape the gloomy atmosphere of impending death which inevitably surrounds *a mortuary.*" The Board was entitled to consider the palpable similarity of all *three* uses in reaching its decision.

Only one judicial pronouncement has been found enjoining a mortuary as a nuisance despite its proximity to a cemetery in a residential area. But that case is factually inapposite because it involved unzoned land and substantial evidence of nuisance, circumstances not here involved. See *Mitchell v. Bearden,* 255 Ark. 888, 503 S.W.2d 904 (1974). It is of no aid to plaintiffs.

The foregoing discussion demonstrates the issue is again one of fact, even under the "commercial nuisance" test espoused by plaintiffs. See *Helmkamp v. Clark Ready Mix Company,* 214 N.W.2d 126, 129 (Iowa 1974), and citations. Thus, as heretofore explained, we may reverse only if trial court's determination lacks substantial evidentiary support. Our review of the record discloses ample evidence from which it could find compliance with § 6(A)(2).

Finally, plaintiffs advance a related contention in support of a reversal. Article XXI, § 5(A)(2) of the ordinance proscribes issuance of special use permits for uses which violate Iowa statutes regulating nuisances. We are then referred to Code § 657.2(5), defining nuisance to include "[t]he obstructing or encumbrancing by fences, buildings, or otherwise * * * [of] burying grounds".

It is assumed "burying ground" is synonymous with "cemetery". See 5A Words and Phrases, "Burial Ground", at 585; "Burying Grounds", at 595 (1968 Perm. Ed.). But no showing is made upon which it could be reasonably found the cemetery will be obstructed or encumbered by a mortuary located on private property.

Plaintiffs have shown no reversible error involving § 6(A)(2). Consequently, there is no basis for reversal on the ground the Board exceeded its authority in granting the special use permit.

## SPECIAL USE CLASSIFICATION OF MORTUARIES AS "SPOT ZONING"

XVII. Plaintiffs' final assignment is patently without merit. Essentially, we are told (1) mortuaries are "strictly commercial" uses; (2) they should be classified as such, rather than "special uses"; and (3) the present special use classification constitutes "an arbitrary and discriminatory zoning enactment". While plaintiffs' argument concludes the West Des Moines zoning ordinance in effect sanctions "spot zoning", therefore violates the "comprehensive plan" requirement of Code ch. 414, the real complaint made is best summarized in this excerpt from plaintiffs' brief:

"There is no rational reason why mortuaries cannot be built in commercial districts, as is allowed under the present zoning ordinance. No sound compulsion of planning or community necessity requires special use treatment for mortuaries. Their inclusion as a special use is therefore arbitrary, discriminatory, and improper."

This contention is plainly addressed to the validity of Art. XXI, § 4(L), classifying mortuaries as special uses. Thus, our resolution of the issue is guided by *Jaffe v. City of Davenport,* 179 N.W.2d 554, 555 (Iowa 1970) where we said:

"[Zoning ordinances] are entitled to the same presumption of validity as other legislative enactments and if their reasonableness is *fairly debatable,* the court will not interfere with the action of the zoning authority by substituting its judgment for that of the legislative body." (emphasis supplied).

Bearing this standard in mind, *Bauman v. Piser Undertakers Company, supra,* 180 N.E.2d at 708, thus aptly disposes of the question at hand: "The matter of locating funeral homes is within the legislative discretion, and the propriety of such action is a

debatable question for determination by the City Council and not by the courts."

More directly in point is this statement in *Anderson v. Sawyer*, 23 Md.App. 612, 329 A.2d 716, 724 (1974):

"By defining a funeral home as an appropriate use *by way of special exception*, the legislature * * * has, in essence, declared that such uses, if they satisfy the other specific requirements of the ordinance, do promote the health, safety and general welfare of the community. *As part of the comprehensive zoning plan this legislative declaration shares in a presumption of validity and correctness which the courts will honor.* [Citations]." (emphasis supplied).

See also *City of Atlanta v. Awtry & Lowndes Co.*, 205 Ga. 296, 53 S.E.2d 358, 361–362 (1949); 101 C.J.S. Zoning § 174, n. 74; 8 McQuillin, *supra*, § 25.178a, at 612–613.

Further discussion is unnecessary. Trial court correctly resolved the instant assignment.

We now hold plaintiffs failed to sustain their burden of demonstrating illegality on any of the assigned grounds.

AFFIRMED.